RICHARD M. DONCASTER, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 12794–80.    Filed August 11, 1981.

Richard M. Doncaster, pro se.
*Charles W. Maurer, Jr.,* for the respondent.

OPINION

TANNENWALD, *Chief Judge*: Respondent determined a deficiency in the amount of $6,947.50 in petitioner's Federal

income tax for 1976 and an addition to tax for fraud under section 6653(b)[1] in the amount of $3,473.75. The case is before us on respondent's motion for a default judgment as to the underlying deficiency and for summary judgment as to the addition to tax for fraud.

The petition herein sets forth the claim that petitioner is a duly ordained clergyman and pastor of the Freedom Church; that, because he has taken a vow of poverty, all the money he earned was contributed to further the missionary work of the church; that, by virtue of the Bill of Rights and First Amendment to the Constitution, religious and secular law were separated; and that, as a consequence, petitioner is not subject to tax on his earnings.

Respondent filed an answer in which he denied the substantive allegations of the petition and further alleged as follows:

7. FURTHER ANSWERING the petition, and in support of the determination that a part of the underpayment of tax required to be shown on the petitioner's joint income tax return for the taxable year 1976 is due to fraud, the respondent alleges:

(a) During the taxable year 1976 the petitioner received dividend income in a total amount of $1,512.00.

(b) The petitioner failed to report any dividend income on his 1976 federal income tax return.

(c) On his 1976 federal income tax return the petitioner claimed a deduction of $22,833.00 for contributions to "The Freedom Church."

(d) The petitioner did not make contributions to "The Freedom Church" during the taxable year 1976 in the amount of $22,833.00.

(e) "The Freedom Church" is not an organization entitled to receive deductible contributions under I.R.C. sec. 170(c)(2).

(f) On his 1976 federal income tax return, the petitioner understated his taxable income in the amount of $22,195.00.

(g) On his 1976 federal income tax return, the petitioner understated his income tax liability in the amount of $6,947.50.

(h) The petitioner, fraudulently, and with intent to evade tax, omitted taxable income of $22,195.00 from his 1976 federal income tax return.

(i) A part of the underpayment of tax required to be shown on the petitioner's 1976 federal income tax return is due to fraud with intent to evade tax.

Petitioner having failed to file a reply, respondent moved for entry of an order that the undenied allegations in the answer

---

[1]Unless otherwise indicated, all section references are to sections of the Internal Revenue Code in effect during the taxable year at issue, and any reference to "Rules" shall be deemed to refer to the Tax Court Rules of Practice and Procedure.

be deemed admitted. That motion was served upon petitioner together with a notice of hearing on the motion on December 10, 1980, in Washington, D.C. Petitioner did not appear at the hearing or otherwise respond to respondent's motion, and the Court, on December 10, 1980, entered an order granting respondent's motion and deeming admitted "the undenied affirmative allegations contained in paragraphs 7(a) to (i), inclusive, of respondent's Answer." A copy of that order was served upon petitioner on December 17, 1980.

This case was noticed for trial at a trial session of the Court commencing on May 4, 1981, in Boston, Mass., and a copy of the notice setting the case for trial was served upon petitioner on January 29, 1981. Petitioner did not appear when the case was called from the calendar on May 4, 1981, nor again when it was called for trial on May 5, 1981.[2] At the latter time, respondent advised the Court that he would not present testimony on the issue of the addition to tax under section 6653(b) but would rely on the deemed admitted allegations of his answer to carry his burden of proof on that issue.

As to the underlying deficiency, there is no question that respondent should prevail, either on the ground that the petitioner has defaulted by virtue of his nonappearance at trial and/or has failed to carry his burden of proof. *Gilday v. Commissioner*, 62 T.C. 260 (1974); *Roldan v. Commissioner*, T.C. Memo. 1980–73; Rule 142(a).

As to the addition to tax for fraud, the burden of proof is on the respondent (sec. 7454(a); Rule 142(b)), and he must carry that proof by clear and convincing evidence (see *Grosshandler v. Commissioner*, 75 T.C. 1, 19 (1980)). In this case, respondent has chosen to rely solely on petitioner's failure to reply to the answer and the order of the Court deeming the affirmative allegations of the answer admitted to carry his burden of proof. Under Rule 36(b), once a petitioner assigns error to the determination of fraud in the deficiency notice (as petitioner did herein), the respondent must affirmatively plead fraud in his answer and include therein the facts in support thereof. This respondent did by means of the allegations set forth in paragraph 7 of the answer. Once respondent so pleads and the

---

[2]Indeed, since the filing of his petition, petitioner has never communicated with the Court.

petitioner fails to file a reply, the affirmative allegations are deemed denied unless the respondent files a motion for an order "that specified allegations in the answer be deemed admitted," in which case the motion will be noticed for hearing. Rule 37(c). The foregoing procedure has the obvious purpose of permitting the issues to be tried to be narrowed, thus conserving the time and efforts of both the parties and the Court. Comparable provisions are contained in sections 7(a) and 8(c), Federal Rules of Civil Procedure.[3] Every element of the required scenario was followed herein, and the allegations of paragraph 7 of the answer, including subparagraphs (h) and (i), were deemed admitted.

It is clear from the foregoing that a petitioner cannot, by total and continued silence, ensure that he will not be considered as having, in effect, conceded his case. The fact that subparagraphs (h) and (i) are worded in conclusory language does not require a different conclusion. They were "specified allegations" within the meaning of Rule 37(c); in our judgment, their deemed admission more than satisfies the respondent's burden of proof. *Marcus v. Commissioner*, 70 T.C. 562, 577 (1978); cf. *Ritchie v. Commissioner*, 72 T.C. 126, 129 (1979). We are reinforced in our conclusion by the numerous holdings that fraud is a question of fact—albeit an ultimate question of fact. E.g., *Grosshandler v. Commissioner, supra* at 19. Even if we were to take the view that, in the context of this case, the ultimate issue of fraud should not be considered a pure question of fact, it is at least a question of "the application of law to fact" and consequently is an appropriate matter for the Court to deem admitted.[4] Cf. Rule 90(a), Tax Court Rules of Practice and Procedure; rule 36(a), Fed. R. Civ. P. So that there will be no misunderstanding, we emphasize that the deemed admissions of the allegations of paragraphs 7(a) through 7(g) are also of importance in respect of respondent's ability to establish his fraud case; he has the burden of proving the facts

---

[3]See also Rule 90, Tax Court Rules of Practice and Procedure, providing for requests for admission, and rule 36, Fed. R. Civ. P., upon which Rule 90 was patterned, which also serves the purpose of narrowing the issues to be tried. See Note to Rule 90, 60 T.C. 1059, 1114.

[4]We note that pars. 7(h) and 7(i) of respondent's answer allege *intent to evade tax* (emphasis added), which is clearly an allegation of fact. See *Stratton v. Commissioner*, 54 T.C. 255, 284 (1970).

necessary to show an underpayment (to which the addition to tax for fraud attaches) and may not rely upon petitioner's failure to produce evidence in order to carry his (respondent's) burden in that respect. *Estate of Beck v. Commissioner*, 56 T.C. 297, 363 (1971).

Nothing in *Gordon v. Commissioner*, 73 T.C. 736 (1980), and its suggestion as to the possible continued vitality of *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931) (see 73 T.C. at 742), dictates that we should require respondent to present affirmative evidence of fraud, independent of the deemed admissions.[5] In *Gordon*, respondent did not utilize the procedure encompassed by Rule 37 and, in point of fact, petitioner filed a reply denying the affirmative allegations of fraud.

*Decision will be entered for the respondent.*

Reviewed by the Court.

DAWSON, *J.*, concurring: I concur both in the result of this case and in the analysis of the majority opinion. I disagree with the dissent that the Court's holding will operate as a trap for "unwary taxpayers" against whom the fraud penalty has been alleged by the Commissioner. I think our Rules preclude the possibility that the addition to tax for fraud will be imposed by default against a petitioner who indicates, however inartfully, that respondent should be put to his proof.

Under Rule 37(c), respondent's affirmative allegations of fraud are deemed denied in the absence of a reply. The petitioner is thus protected against his or her own inaction. However, respondent can move for an order that the undenied allegations be deemed admitted. Under Rule 21(a), such a motion must be served on the petitioner. The usual Rule 37(c) motion is not incomprehensible to the average petitioner. At the very least, it intuitively alerts him to the fact that

---

[5]Indeed, we suggested that, in light of developments in the procedural rules of this Court and the Federal Rules of Civil Procedure subsequent to *Miller-Pocahontas Coal Co. v. Commissioner*, that case may well have been sapped of most, if not all, of its vitality. See *Gordon v. Commissioner*, 73 T.C. 736, 742 (1980).

respondent contemplates action adverse to his interest. Such alert should elicit some protective response. In any event, the Court does not automatically grant a Rule 37(c) motion but sends the petitioner a notice setting it for hearing. The notice expressly provides that respondent's motion will be denied if a reply is filed on or before the hearing date. The petitioner who chooses not to do so can still protect his interest by appearing at the hearing. If this is inconvenient, Rule 50(c) provides for the submission of a written statement. The petitioner is clearly advised of this provision in the notice setting the motion for hearing.

Thus far, the petitioner has been given a number of opportunities to deny respondent's affirmative allegations. The simplicity of so doing, and thereby putting respondent to his proof of fraud at a later stage of the case, cannot be overstated. All the petitioner needs to do is deny those allegations.[1] I do not think it is asking too much to require this to be done. After all, it is the taxpayer who files a petition with this Court requesting to be heard. By so doing, he assumes certain responsibilities the discharge of which requires some measure of participation in the judicial process and a good-faith effort to comply with the Court's rules.

Even the granting of a Rule 37(c) motion does not mean that the fraud penalty will be automatically imposed on the petitioner. Respondent must still affirmatively move for judgment, either by written motion before trial or orally at trial, with respect thereto. Again the petitioner is given notice and the opportunity to be heard. If he wanted to deny fraud at that juncture, the Court could, if justice required, exercise its discretion by vacating the Rule 37(c) order and permit a belated reply.

The petitioner, here, was afforded several opportunities to be heard. All he had to do was to say in so many words: "I deny respondent's affirmative allegations of fraud." This would have been sufficient to put respondent to his proof with respect to fraud. Instead, he repeatedly chose to remain silent.[2] Under

---

[1] Under Rule 31(b), no technical form of pleading is required, and under Rule 31(d), all pleadings are to be construed as to do substantial justice.

[2] I do not know why petitioner chose this course of action. However, I seriously doubt that he was either intimidated by being before this Court or without some knowledge of the

these circumstances I see no unfairness in the action we have taken in this case.

Finally, I do not share the dissent's concern that our holding may encourage respondent to more freely allege fraud or to plead it with less particularity. Given the ease with which a petitioner can deny respondent's affirmative allegations, and thus put him to his proof, respondent would be ill advised to allege fraud with the hope that a petitioner would default. Similarly, if respondent attempted to plead fraud only in a conclusory manner, the Court would probably look favorably on a petitioner's motion for a more definite statement or a motion dispositive of the fraud issue.

FAY, SIMPSON, HALL, WILES, WILBUR, and PARKER, *JJ.*, agree with this concurring opinion.

IRWIN, *J.*, concurring: While I concur in the result reached by the majority, I am troubled by the method used to resolve the issue of the imposition of the fraud penalty.

The majority holds that paragraphs 7(h) and 7(i) of respondent's answer which were deemed admitted under Rule 37(c) satisfy respondent's burden of proving petitioner's fraudulent intent. In my view, that burden was met by the allegations of paragraphs 7(a) through 7(g) of respondent's answer, which were similarly deemed admitted.[1]

I agree with the majority's statement that nothing in *Gordon v. Commissioner*, 73 T.C. 736 (1980), dictates that we should require respondent to present affirmative evidence of fraud, independent of the deemed admissions. Indeed, we have used deemed admissions to find fraud on several occasions. *Marcus v. Commissioner*, 70 T.C. 562, 577–578 (1978), affd. in an unpublished order 621 F.2d 439 (5th Cir. 1980); *Gilday v. Commissioner*, 62 T.C. 260, 262 (1974). What concerns me, however, is that the majority opinion while literally professing

---

judicial process, because an aspect of this matter involving the enforcement of an administrative summons was previously litigated in the U.S. District Court and the Court of Appeals. See *United States v. Freedom Church*, 613 F.2d 316 (1st Cir. 1979).

[1]Thus, in my opinion, even if the Court had denied respondent's Rule 37(c) motion as to pars. 7(h) and 7(i) on the ground that they are ultimate facts or conclusions of law, the imposition of the fraud penalty would still be appropriate because the fraudulent intent can be inferred from the deemed admitted facts contained in pars. 7(a) through 7(g).

to be consistent with the above cases, in substance runs afoul of the precedent set in those cases.

In *Gilday*, the taxpayer did not appear at trial and the case contesting the basic deficiency was dismissed for lack of prosecution. Respondent also moved for judgment on the fraud issue raised therein and relied on the facts deemed admitted under then Rule 18(c) (now Rule 37(c)) to satisfy his burden of proof. After reviewing the substance of respondent's allegations,[2] we held that those facts were sufficient to satisfy respondent's burden of proof. As authority, we cited Rule 122 which provides that any case not requiring a trial for submission of evidence (as, for example, where sufficient facts have been admitted) may be submitted to the Court on the facts so established without trial. It is therefore evident to me that heretofore our procedure respecting the determination of fraud as it relates to an absent petitioner has envisioned a weighing or judging of the facts deemed admitted so as to determine whether the ultimate finding of fraud is appropriate.

At first glance, the majority herein appears to be following the guidelines set forth in *Gilday*. Yet the majority departs from those guidelines by characterizing respondent's conclusory statements that petitioner fraudulently omitted taxable income and that a part of the underpayment of tax was due to fraud as "more than [satisfying] the respondent's burden of proof." Thus, while I believe that subparagraphs (a) through (g) of respondent's answer provide a sufficient basis for imposition of the fraud penalty, and, accordingly, I concur in the result reached by the majority, I believe its reliance on respondent's ultimate finding of fraud (whether characterized as an ultimate fact, the application of law to facts, or a conclusion of law) runs counter to our holding in *Gilday*. In *Gilday we* weighed the facts deemed admitted to determine if fraud existed. In the instant case, the majority accepts

---

[2] The deemed admitted facts in *Gilday v. Commissioner*, 62 T.C. 260, 262 (1974), were that petitioner claimed dependency exemptions for four children for whom he did not supply more than 50 percent of their support, that he gave a false address on his income tax return, that he erroneously claimed an exemption for his estranged wife, and that he forged his wife's signature on a purported joint return.

respondent's judgment that the facts necessarily establish the existence of fraud.[3] By accepting respondent's judgment without performing our independent weighing of the facts as mandated in *Gilday*,[4] I think the majority establishes potentially dangerous precedent.

The effect of the majority's approach on future cases is unclear. This Court, on the one hand, might, hopefully, limit today's holding to rely on respondent's allegation of the ultimate finding of fraud only when egregious facts such as those presented in subparagraphs (a) through (g) are also deemed admitted.[5] Such a possibility is indeed authorized by Rule 37(c) which states that a motion for an order that specific allegations in the answer be deemed admitted *may* be granted, thus implying that the motion may be denied in whole or in part even if petitioner fails to file a reply.[6] But then why not find the fraud on those egregious facts thus leaving no doubt that we retain the judgment function in our province rather than creating an impression that we have delegated our duty to respondent?[7]

---

[3]In a technical sense, it might be argued that the majority has weighed the evidence before it by considering subpars. (h) and (i) and then declaring that respondent has satisfied his burden of proof on the fraud issue. But clearly, this is sleight of hand as in essence the majority, by stating that it accepts subpars. (h) and (i), in effect finds fraud because respondent has so found in his ultimate allegation of fraud (which is a routine part of respondent's pleadings in fraud cases and Rule 37(c) motions).

[4]Although the majority adds a caveat stating that the facts contained in subpars. (a) through (g) are also "of importance" because they prove the facts necessary to show an underpayment, this also is illusion as subpars. (h) and (i) conclude both that an underpayment exists and that there was a fraudulent intent. Therefore, subpars. (a) through (g) are rendered superfluous.

[5]Rule 36(b) requires that respondent's answer include the facts supporting the assertion of fraud. Thus, if a Rule 37(c) motion were to follow, we would always be presented with factual allegations deemed admitted in addition to the ultimate fraud allegation. The question then posed would be whether those supporting facts, alone, were sufficient for us to reach the ultimate finding of fraud.

[6]However, if today's holding also extends to requests for admission under Rule 90, the protection provided a petitioner by the Court's participation will not exist. Under Rule 90, a matter is deemed admitted unless the party to whom the request is directed answers the request for admission or objects to it. No motion is required as "a party's failure to respond to a request will result automatically in the admission of the statements in the request without the necessity of a confirming order." *Freedson v. Commissioner*, 65 T.C. 333, 335–336 (1975), affd. 565 F.2d 954 (5th Cir. 1978).

[7]It is unclear whether the majority would have found fraud solely from pars. 7(a) through 7(g). As I have stated, I would have inferred a fraudulent intent from those deemed admitted facts. If the majority would not have so found, then the fraud penalty should not have been imposed.

On the other hand, the manner in which the majority holds against petitioner on the fraud issue, although couched in terms of a judgment that respondent has carried his burden of proof, could easily be construed as equivalent to a judgment of default against petitioner. Indeed, in a footnote, the majority indicates that we suggested in *Gordon v. Commissioner*, 73 T.C. 736, 742 (1980), that *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931), may have been sapped of most, if not all, of its vitality. In the latter case it was held that where the taxpayer did not appear at trial, the fraud penalty could not be included in the Court's order of dismissal without an affirmative offering of proof by the Government. Coupling the majority's statement concerning the vitality of *Miller-Pocahontas Coal Co.* with its acceptance of respondent's ultimate finding of fact, my concern is that the majority opinion might be interpreted to mean that fraud may be found where a taxpayer does not appear, even without any affirmative proof of fraud. This would be tantamount to default.

I am not convinced that *Gordon* announced the demise of *Miller-Pocahontas Coal Co.* While we questioned its continued vitality in light of the then-recently adopted Rule 123(a) and case law that developed under rule 55, Federal Rules of Civil Procedure, we stated only that "it may be arguable" that Rule 123(a) and case law would permit default on the fraud issue. Furthermore, we added a footnote of warning in *Gordon*[8] that, if we were to enter a default decision on the fraud issue, it could lead to an increased and indiscriminate use of the fraud penalty by respondent.

My concern is that the majority opinion may sap *Miller-Pocahontas Coal Co.* and other cases (*Marcus v. Commissioner, supra; Gilday v. Commissioner, supra*) which required affirmative proof of fraud. Such a result is undesirable in view of the ease with which respondent could then impose the fraud penalty on inattentive but innocent taxpayers.

In summary, I agree with the majority that the fraud penalty should be imposed herein. However, that holding should be based on *our* finding of fraud after weighing the deemed admitted facts contained in paragraphs 7(a) through

---

[8] 73 T.C. at 742 n. 8.

7(g) of respondent's answer. I oppose the majority's acceptance of respondent's finding of an ultimate fact as evidence sufficient to carry his burden of proof. Such acceptance is tantamount to an abdication of the decision-making role of this Court.

STERRETT, *J.*, agrees with this concurring opinion.

WILBUR, *J.*, concurring: The majority opinion provides an unnecessarily conservative procedure for disposing of the increasing number of cases where petitioners decline * to participate in any pretrial or trial proceeding after filing their petitions.

I would go further and default the petitioner in cases like the one before us. When a taxpayer files a petition and then does no more, when he repeatedly declines to participate in pretrial preparations at any stage, when he refuses, after notice, to appear at trial or otherwise argue the merits of his case, we should uphold respondent's determination in full without examining the merits of the controversy. That is precisely what we do with regard to the underlying deficiency, and I see no good reason for treating the fraud penalty differently. If a taxpayer persistently refuses to participate in our proceedings, then the proceedings should end—it is as simple as that.

Our Rules explicitly provide for a termination of the proceeding when a taxpayer refuses to participate in the prosecution of his case. Rule 123(a) and (b). In such a case, a decision is entered in favor of respondent which "[operates] as an adjudication on the merits." Rule 123(d) *supra*. While we have not hesitated to enforce this Rule with respect to respondent's deficiency determinations, we have held that respondent must prove his entitlement to the fraud penalty even if this results in a trial in absentia. *Miller-Pocahontas Coal Co. v. Commissioner*, 21 B.T.A. 1360 (1931). Cf. *Gilday v. Commissioner*, 62 T.C. 260 (1974). Thus, we recite a litany of "deemed" admissions, "find" facts not disputed, and then "decide" the case as best we can, issuing a written opinion in every case. See, e.g., *Brown v. Commissioner*, T.C. Memo. 1981–294. Often we have a "trial," the respondent putting on his

case without the presence or participation of the taxpayer. These little one-act pantomimes complete with briefs and an opinion are a charade in which we can no longer indulge. The enormous growth in our caseload requires that we recognize the inconvenience these useless and futile histrionics impose on other citizens having business before this Court.[1]

Our reluctance to default a taxpayer stems from *Miller-Pocahontas Coal Co. v. Commissioner, supra* at 1361, where we held that we lacked authority to award respondent the statutory fraud penalty when we dismissed a taxpayer's suit for want of proper prosecution. Our decision was based on the congressional specification that "a decision of the Board [of Tax Appeals] dismissing the proceeding shall be considered as its decision that the *deficiency* is the amount determined by the Commissioner." See sec. 601(c), Revenue Act of 1928, Pub. L. 562, 45 Stat. 871 (emphasis added). We then observed, as the Internal Revenue Code now makes clear, that an addition to tax such as the fraud penalty is technically not part of the "deficiency." See sec. 6211(a).

As a matter of statutory construction, our decision in *Miller-Pocahontas* has always been open to criticism. Our jurisdiction to determine whether a taxpayer is liable for an addition to tax was inferred from our authority to determine the correctness of respondent's asserted *deficiencies* (see *Gutterman Strauss Co. v. Commissioner,* 1 B.T.A. 243, 247–249 (1924)), and is supported by the congressional declarations that "additions to the tax * * * shall be assessed, collected, and paid in the same manner as taxes" and that "Any reference * * * to 'tax' * * * shall be deemed also to refer to the additions to the tax." Sec. 6659(a); compare id. with sec. 275(b), Revenue Act of 1924, Pub. L. 176, 43 Stat. 298. Moreover, the section 6653(a) addition to tax (the "negligence penalty") *may* be imposed in a

<hr/>

[1]The majority states (p. 338 *supra* ) that the respondent "has the burden of proving the facts necessary to show an underpayment (to which the addition to tax for fraud attaches) and may not rely upon petitioner's failure to produce evidence in order to carry his (respondent's) burden in that respect." As I read this language, if the petitioner is defaulted as to the basic deficiency, it may still be necessary to have a trial at which respondent must demonstrate a deficiency (underpayment) exists to which the fraud penalty attaches. These time-consuming legal anomalies must be amusing to the growing number of "protesters" who file petitions simply to throw sand in the gears of Government.

default proceeding. Cf. *Giles v. Commissioner*, T.C. Memo. 1977–278.

*Miller-Pocahontas Coal Co. v. Commissioner* also suggested (21 B.T.A. at 1361) that a taxpayer is protected from default and dismissal on the fraud penalty by section 7454(a), which provides that "In any proceeding involving the issue whether the petitioner has been guilty of fraud with intent to evade tax, the burden of proof" to establish fraud by clear and convincing evidence shall be upon the Secretary. Yet, it is quite clear that the burden of proof only comes into play when there is a trial on the merits—in a default or dismissal proceeding, the burden of proof is simply irrelevant.[2]

Our Rule 123(a) permits a default "When any party has failed to plead or otherwise proceed." Similarly, Rule 123(b) permits a dismissal "For failure of a petitioner properly to prosecute or to comply with these Rules." Both are based upon the Federal Rules of Civil Procedure, rules 55 and 41, see Notes, 60 T.C. 1129–1130 (1973), and as the Federal courts have repeatedly held, default or dismissal is fully appropriate when a party continually refuses to participate in the proceedings. See, e.g., *Stanley v. Continental Oil Co.*, 536 F.2d 914 (10th Cir. 1976); *Baez v. S. S. Kresge Co.*, 518 F.2d 349 (5th Cir. 1975) (per curiam), cert. denied 425 U.S. 904 (1976). Moreover, there has never been a suggestion that a taxpayer is immune to default in the many other situations where the respondent has the burden of proof—where an increase in deficiency was asserted or a new issue raised by respondent in his answer; where respondent must prove improprieties of a foundation manager by "clear and convincing evidence" (see sec. 7454(b); Rule 142(c)); where the liability is premised upon the taxpay-

---

[2]Our Rule 123(b) is adopted from rule 41(b), Fed. R. Civ. P. It has been said that "It is apparent on the face of the rule that rule 41(b) is solely a defendant's remedy, though it may be invoked by a plaintiff who is defending against a counterclaim." C. Wright & A. Miller, Federal Practice and Procedure: Civil, sec. 2369, p. 191 (1971). Nevertheless, our Rule 123(b) is broader than rule 41(b), providing that the Court "may dismiss a case at any time and enter a decision against the petitioner" where the petitioner fails to "properly prosecute *or* to comply with these Rules *or* any order of the Court *or* for other causes which the Court deems sufficient." This language clearly appears to encompass the circumstances before us. However, even assuming arguendo our Rule 123(b) is inapplicable, it is clear that the petitioner may be defaulted under Rule 123(a) which is adopted from rule 55, Fed. R. Civ. P. See *United States v. Roslyn Construction Co.*, 165 F. Supp. 133 (1958), vacated and remanded on other grounds sub nom. *American Auto Insurance Co. v. United States*, 269 F.2d 406 (1st Cir. 1959); *United States v. Edgewater Dyeing & Finishing Co.*, 21 F.R.D. 304 (E.D. Pa. 1957).

er's status as a transferee (sec. 6902(a); Rule 142(d)); or when the deficiency is based upon the accumulated earnings tax and the burden of proof has been shifted to respondent (sec. 534, Rule 142(e)). How can a default in these instances be distinguished from the circumstances before us?

Our resources are strained to their limits, and this Court's docket is ever burgeoning. When a taxpayer is so indifferent to the outcome of his case that he cannot be bothered to participate, we rightly should make short shrift of his suit. The majority opinion paves the way for us to do just that: I would prefer to do so more forthrightly, and overrule *Miller-Pocahontas Coal Co. v. Commissioner, supra.*

FAY, FEATHERSTON, and WILES, *JJ.*, agree with this concurring opinion.

GOFFE, *J.*, dissenting: I respectfully dissent. I would not apply such a broad construction to the Court's Rules so as to automatically impose the fraud penalty on unwary taxpayers.

While I do not favor applying our Rules in pro se cases differently than in cases where the taxpayers are represented, I feel that the lack of knowledge and understanding of our Rules by pro se taxpayers is so widespread that we are compelled to extend ourselves to protect the rights of all petitioners, whether represented or not, even if it might be more judicially efficient not to do so.

At the outset, let me say that I do not champion the cause of a taxpayer who files a petition in this Court and then fails to respond to any request for admissions, interrogatories, notice to produce, or other discovery method. Whether ignorant of the Rules or not, a taxpayer should make a good-faith effort to cooperate with respondent and the Court. The opinion of the majority will, however, result in the imposition of the fraud penalty against taxpayers who have never seen a copy of our Rules and taxpayers who have seen them but do not understand them.

Petitioner plunged into the procedural pitfall in this case by his failure to object to respondent's motion that the allegations of fraud in the answer be deemed admitted and because of petitioner's failure to file a reply denying those allegations.

The order setting respondent's motion for hearing indicated the hearing would be in Washington, D.C. (petitioner presumably resides in the Boston, Mass., area where the case was set for trial). Respondent's motion was expressed in the usual "legalese" which is not very informative to a layman, i.e., "that the undenied allegations in paragraph 7(a) through 7(i) of the answer be deemed admitted."

The majority also refers to Rule 90 which provides for "Request for Admissions." A request for admissions (as well as a notice to produce and request for interrogatories) is initiated by respondent independently of the Court. Upon the failure of petitioner to respond, the Court is asked to get into the act. Again, a pro se taxpayer might naturally be wary of such a procedure without a full understanding of our Rules and their objectives.

I would limit the application of our Rules to admissions of fact only. Subparagraphs (h) and (i) of paragraph 7 of respondent's answer were not allegations of fact but, instead, were allegations of ultimate facts which are mixed questions of law and fact. Pure questions of fact, as distinguished from ultimate facts or mixed questions of law and fact, are accorded different standards of review on appeal. See *Edwards v. Commissioner*, 415 F.2d 578 (10th Cir. 1969), revg. 50 T.C. 220 (1968).

The holding of the majority may encourage some of the Commissioner's agents to adopt an overly relaxed attitude toward the amount of factual foundation which ought to be included in the fraud allegations to which a petitioner is required to reply under our Rules. I would prefer to require the Commissioner to prove fraud in all cases. If sufficient facts (basic facts not ultimate facts) are not admitted by the pleadings, there is no great expenditure of time involved in presenting respondent's evidence to the Court.

I conclude that we should continue to protect the rights of all taxpayers in fraud cases by weighing all of the evidentiary facts adduced to prove fraud instead of permitting the fraud penalty to be imposed by default.

CHABOT and EKMAN, *JJ.*, agree with this dissenting opinion.