NICHOLAS GUERCIO AND VICTORIA CONSTANTINE (FORMERLY GUERCIO,), Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Guercio v. Commissioner
Docket No. 4098-74.
United States Tax Court
T.C. Memo 1983-554; 1983 Tax Ct. Memo LEXIS 225; 46 T.C.M. (CCH) 1344; T.C.M. (RIA) 83554; September 12, 1983. Douglas S. McGlashan, for petitioner Victoria Constantine (formerly Guercio). Peter D. Bakutes and Steven R. Guest, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: This case is related to, but not presently consolidated with, Westent, Inc. v. Commissioner, Docket No. 2404-74, and Edward Charles and Ruth Charles v. Commissioner, Docket No. 4099-74, which are also decided this day. See T.C. Memo. 1983-553 and T.C. Memo. 1983-555. Respondent determined *227 the following deficiencies in petitioners' Federal income taxes and additions to tax: Addition to Tax
Year
Deficiency
Section 6653(b) [1]
1968
$4,693.46
$2,346.73
1969
6,633.69
3,316.84
1970
29,127.33
14,563.67
Petitioner Victoria Constantine and respondent have filed a Stipulation with the Court in which they agree on the disposition of all issues involving said petitioner. Accordingly, the issues remaining for decision involve only petitioner Nicholas Guercio. [2] Those issues are (1) whether respondent's determination of the deficiencies should be sustained, and (2) whether respondent has established by clear and convincing evidence that part of the underpayment of income tax for each of the taxable years 1968 through 1970 was due to petitioner's fraud with intent to evade tax. The resolution of the second issue will decide whether the deficiencies for 1968 and 1969 [3] may be assessed pursuant to the false return exception to the general 3-year statute of limitations. [4] See sections *228 6501(a) and 6501(c)(1). On March 11, 1983, respondent served petitioner with a request for admission pursuant to Rule 90. [5] However, petitioner failed to respond to the request. Accordingly, each matter in the request is deemed admitted and conclusively established for purposes of this case. Rule 90(c) and (e); Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978). The facts deemed admitted, as well as the facts admitted in the pleadings, are summarized below. Facts
Petitioner resided in San Francisco, California at the time he *229 filed his petition in this case. Petitioner filed Federal income tax returns for the calendar years 1968 through 1970 with the Internal Revenue Service Center in Ogden, Utah. The principal adjustment to income in this case involves unreported income received by petitioner during the years in issue from Calent, Inc. (hereinafter "Calent"), a California corporation with its principal place of business in San Francisco, and unreported income received by him during 1970 from One Thirty Nine Ellis Street Corporation (hereinafter "Ellis"), another California corporation with its principal place of business in San Francisco. Because of the important role played by these corporations, their ownership, business, and operation will be described in detail. Calent
During the years in issue petitioner was the record owner of all of the stock in Calent. However, he actually owned only half of that stock. The balance was actually owned by a third party. The use of nominees to hold stock was intended to conceal that actual ownership of Calent. As we shall see, it was also intended to conceal the skimming of that corporation's unreported receipts by petitioner and the other *230 true owner and was fraudulent with intent to evade tax. Petitioner was president of Calent. He and the other tre owner made all the business decisions and all the day-to-day operating decisions for the corporation. During the years in issue Calent's sole business activity was the ownership and operation of the Dark Room, a nightclub-bar located on O'Farrell Street in San Francisco. The Dark Room sold alcoholic, as well as non-alcoholic, drinks to its patrons. As an attraction it offered "dancing" by semi-nude and nude female performers. The Dark Room was one of the first establishments in the United States to offer this type of entertainment, and it attracted a large number of tourists as well as regular local patrons. As a consequence, the Dark Room was able to set prices, establish drink minimums, and attach other conditions to admission at its sole and competitively unrestricted discretion. Pursuant to policies established by petitioner and Calent's other true owner, female employees of the Dark Room regularly solicited the purchase of drinks from male patrons. The price charged for each "bar girl" drink averaged $5 (whether or not alcoholic) and $30 to $50 or more for *231 a standard size bottle of champagne. The female employee was paid $1 from the sale of such drinks and one-half the proceeds from the sale of champagne, and the balance was returned by the Dark Room. During the years in issue the Dark Room was open twenty hours per day (6 a.m. to 2 a.m.), seven days per week. Each day of operation was divided into a day shift and a night shift of approximately equal duration. On the average, no fewer than 20 patrons were present at the Dark Room at any given time during the day shift and no fewer than 50 patrons were present at any given time during the night shift. All sales at the Dark Room were "rung up" on the cash register and the proceeds placed in the cash drawer. At the end of each shift the cash register was totaled, its contents were removed, and the receipts were reconciled to the cash register tape. The tape was removed from the cash register and associated with the receipts. A recapulation sheet, reflecting the total proceeds for the shift as well as the amounts paid out of the cash register, was then prepared. Calent's cash receipts journal and the income (sales) account of its general ledger were prepared by an accountant *232 directly from the aforementioned cash register tapes and recapitulation sheets. The accountant verified Calent's gross income (for both Federal income tax and book purposes) by reconciling the tapes and sheets to the bank deposits made to Calent's account. However, petitioner and the corporation's other true owner withheld from the accountant the cash register tapes and recapitulation sheets for one of the two daily shifts at the Dark Room. In order to conceal their deception, petitioner and the other true owner deposited to Calent's bank account only the receipts reflected on the tapes and sheets that were actually furnished to the accountant. The cash register tapes and the recapitulation sheets that were withheld from the accountant, i.e., those for the other daily shift at the Dark Room, as well as the related receipts themselves, were retained until the following Monday evening. At that time petitioner and Calent's other true owner assembled in the downstairs office of another nightclub-bar, compared the skimmed cash for the preceding seven days with the daily records thereof, and divided the cash equally between them. Immediately thereafter the seven secret cash register *233 tapes and the seven secret recapitulation sheets were burned in a waste paper basket in order to destroy all documentation of the existence and the dollar amount of the skimmed cash. Receipts in the following amounts were omitted from Calent's books and records pursuant to the scheme described above: Year
Amount
1968
$29,569.30
1969
35,635.49
1970
76,578.20
These amounts were diverted to petitioner and Calent's other true owner. By participating in the scheme previously described, petitioner received as his share of Calent's unreported gross receipts the following amounts: Year
Amount
1968
$14,784.65
1969
17,817.74
1970
38,289.10
These amounts (less the dividend exclusion) represent taxable income to petitioner but were not reported by him on his Federal income tax returns for 1968 through 1970. His failure to include these amounts in income was fraudulent with intent to evade tax as to each of the years in issue. Ellis
An individual by the name of Mountanos was the record owner of all of the stock in Ellis.However, he actually owned only 20 percent of the stock. The balance (or 80 percent) was owned by petitioner *234 (30 percent) and one other individual (50 percent). As was the case with Calent, the use of nominees to hold stock was intended to conceal the actual ownership of Ellis. It was also intended to conceal the skimming of that corporation's unreported receipts by petitioner and the other true owners and was fraudulent with intent to evade tax. Petitioner and Ellis' 50-percent true owner made all the business decisions and all the day-to-day operating decisions for the corporation.
During 1970 Ellis' sole business activity was the ownership and operation of the Bourbon Street, a nightclub-bar located on Ellis Street in San Francisco. The business operation of the Bourbon Street was identical in every material respect to the business and operation of the Dark Room, including the fraudulent scheme to skim and not report the part of the corporation's income that was derived from one of the two daily shifts. During 1970 receipts in the amount of $67,957.20 were omitted from Ellis' books and records pursuant to the scheme previously described. Those receipts were diverted to petitioners and the corporation's other true owners. In this fashion petitioner received $20,387.16 during *235 1970 as his share of Ellis' unreported gross receipts. This amount represents taxable income to petitioner but was not reported by him on his Federal income tax return for 1970. His failure to include this amount in income was fraudulent with intent to evade tax. Other Operative Facts
On his Federal income tax returns for 1969 and 1970 petitioner claimed itemized deductions in the amount of $5,144.06 and $6,539.13, respectively. Petitioner failed to substantiate, and is not entitled to, those deductions. On his Federal income tax returns for 1968 through 1970 petitioner reported tax liabilities of $2,429.50, $1,075.85, and $2,039.13, respectively. However, his true tax liabilities for those years were actually $7,122.96, $7,709.54, and $31,166.46, respectively. Thus, petitioner underreported his true tax liabilities for 1968 through 1970 by $4,693.46, $6,633.69, and $29,127.33, respectively. On April 11, 1973 an indictment was filed against petitioner and several other individuals in the United States District Court for the Northern District of California (Cr. No. 73-246 WTS). One count of that indictment charged petitioner with knowingly and willfully attempting *236 to evade and defeat Federal income tax by filing a false and fraudulent income tax return for 1969, in violation of section 7201. On November 26, 1973 petitioner pleaded guilty to that charge. On December 12, 1973 he was convicted of income tax evasion by the District Court pursuant to his plea. Part of the underpayment of Federal income tax for each of the taxable years 1968 through 1970 was due to petitioner's fraud with intent to evade tax. Issue 1. Deficiencies
Petitioner received income from Calent during each of the years in issue and from Ellis during 1970 which he did not report on his Federal income tax returns for those years.It is perfectly clear that such income is taxable and that petitioner should have reported it. Section 61(a). It is equally clear that deductions are a matter of legislative grace and that a taxpayer may claim a deduction only if he is entitled to it and can substantiate the amount. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934); Hradesky v. Commissioner,65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. 1976). Here it is established that petitioner failed to *237 substantiate, and is not entitled to, certain deductions which he claimed on his income tax returns for 1969 and 1970 and which respondent disallowed. In view of the foregoing, we sustain respondent's determination that there are deficiencies in petitioner's Federal income taxes for the taxable years 1968 through 1970 as set forth in the notice of deficiency. Issue 2. Fraud
The principal issue in this case is whether any part of the underpayment of tax for each of the taxable years 1968 through 1970 was due to fraud with intent to evade tax within the meaning of section 6653(b). We will first consider the taxable year 1969 and then conclude with the other two taxable years. 1969
In April 1973 petitioner was indicted for knowingly and willfully attempting to evade and defeat Federal income tax by filing a false and fraudulent income tax return for 1969. Later that year he was convicted upon his plea of guilty. Under the doctrine of collateral estoppel (estoppel by judgment), petitioner is estopped in this case by his prior criminal conviction from denying that he filed a false and fraudulent income tax return for 1969 with the intent to evade and defeat *238 a part of the income tax due and owing by him for that year. He is also estopped from denying that, due to such fraud, there is an underpayment of tax within the meaning of section 6653(b). Article Ice Cream Co. v. Commissioner,43 T.C. 68, 74-76 (1964). 1968 and 1970
Whether fraud exists is a question of fact to be decided after an examination of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970), modified on another issue 54 T.C. 1351 (1970). Respondent bears the burden of establishing fraud, and he must prove it by clear and convincing evidence. Section 7454(a); Rule 142(b). See, e.g., Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). To establish fraud respondent must show that the taxpayer intended to evade taxes, which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion *239 of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); Acker v. Commissioner,26 T.C. 107, 111-112 (1956). Such intent may be proved by facts deemed admitted pursuant to the Rules of the Court. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980); Doncaster v. Commissioner,77 T.C. 334, 337 (1981); Gilday v. Commissioner,62 T.C. 260 (1974); see Freedson v. Commissioner,65 T.C. at 335; cf. Rechtzigel v. Commissioner,79 T.C. 132, 142-143 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983). In our view, the facts which have been conclusively established pursuant to respondent's request for admission, together with the facts admitted in the pleadings, clearly demonstrate that petitioner fraudulently underpaid his taxes for 1968 and 1970. We think the following facts are particularly persuasive. First, petitioner failed to report significant amounts of income received from Calent during each of years in issue and from Ellis during 1970. It is well established *240 that a consistent pattern of underreporting substantial amounts of income over a period of several years is a strong indicium of fraud. Holland v. United States,348 U.S. 121, 139 (1954). Second, the record ownership of Calent and Ellis did not reflect the actual ownership of those corporations. The use of nominees was intended to conceal the skimming of Calent's and Ellis' unreported receipts by their true owners. Third, each day's income records for one of the two shifts at the Dark Room and the Bourbon Street were withheld from Calent's and Ellis' accountant. In order to prevent the accountant from discovering the deception, only the receipts reflected on the records which were actually furnished to him were deposited to Calent's and Ellis' bank account. Fourth, the income records that were not furnished to Calent's and Ellis' accountant were periodically burned in order to destroy all evidence of the skimming operations. Destruction of records is one of the classic indicia of fraud. Spies v. United States,317 U.S. 492, 499 (1943). Fifth, Calent's and Ellis' unreported income was secretly divided among the true owners on a weekly basis *241 according to their respective ownership interests in the two corporations. In view of the foregoing, we hold that petitioner is liable for the additions to tax under section 6653(b) as set forth in the notice of deficiency. Accordingly, assessment of the deficiencies for 1968 and 1969 is not barred by the statute of limitations. See footnote 3 and the accompanying text. To reflect both our conclusions and the Stipulation filed herein, As to petitioner Nicholas Guercio, decision will be entered for respondent.
As to petitioner Victoria Constantine, decision will be entered in accordance with the Stipulation between said petitioner and respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
2. For the sake of convenience petitioner Nicholas Guercio will henceforth be referred to as "petitioner". ↩
3. There is no issue concerning the statute of limitations for 1970 because the notice of deficiency was issued within three years of the statutory due date for that year's return. See sections 6501(b)(1) and 6503(a)(1). ↩
4. In the alternative respondent contends that the deficiencies for 1968 and 1969 may be assessed pursuant to the 6-year statute of limitations. See section 6501(e)(1).↩
5. All Rule references are to Tax Court Rules of Practice and Procedure.↩