T.C. Memo. 2003-208

UNITED STATES TAX COURT

THOMAS RICE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 17356-94.                    Filed July 15, 2003.

Thomas Rice, <u>pro se</u>.

<u>Richard A. Stone</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Respondent determined the following income tax deficiencies and additions to tax with respect to petitioner's Federal income tax:

| | | Additions to tax | | | | |
|---|---|---|---|---|---|---|
| Year | Deficiency | Sec. 6653 (b)(1) | Sec. 6653 (b)(2) | Sec. 6653 (b)(1)(A) | Sec. 6653 (b)(1)(B) | Sec. 6654 |
| 1982 | [1]$14,041 | $7,021 | [2] | -- | -- | $1,359 |
| 1983 | [3]15,785 | 7,893 | [4] | -- | -- | 964 |
| 1984 | 12,953 | 6,477 | [5] | -- | -- | 814 |
| 1985 | 27,178 | 13,589 | [6] | -- | -- | 1,558 |
| 1986 | 19,911 | -- | -- | $14,933 | [7] | 963 |
| 1987 | 5,430 | -- | -- | 4,073 | [8] | 294 |

[1]  This deficiency is subject to a prepayment credit adjustment of $73.

[2]  50 percent of the interest due on $13,968.

[3]  This deficiency is subject to a prepayment credit adjustment of $19.

[4]  50 percent of the interest due on $15,766.

[5]  50 percent of the interest due on $12,953.

[6]  50 percent of the interest due on $27,178.

[7]  50 percent of the interest due on $19,911.

[8]  50 percent of the interest due on $5,430.

All section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After concessions,[1] the issues for decision are:

---

[1]In the notice of deficiency dated June 27, 1994, respondent determined that petitioner:  (1) Received unreported interest income during 1982, 1983, 1984, 1985, 1986, and 1987 of $84, $290, $22, $114, $110, and $19, respectively; (2) received unreported income from forgiveness of indebtedness during 1986 of $3,471; and (3) is liable for self-employment taxes for all years at issue.  Petitioner did not raise these issues in his petition or at trial.  We deem these issues conceded.  See Rule 34(b)(4).

Additionally, in his petition petitioner alleged that respondent erred in determining that petitioner:  (1) Is not entitled to various deductions claimed on Schedule A, Itemized Deductions, in addition to those allowed by respondent for all years at issue; (2) is not entitled to head-of-household filing status under sec. 2(b) for all years at issue; (3) is not entitled to the child care credit under sec. 21 for all years at

(continued...)

(1) Whether petitioner received unreported income from the sale of tax shelters and insurance during 1982, 1983, 1984, 1985, 1986, and 1987 of $56,701, $46,744, $16,939, $27,783, $49,346, and $23,406, respectively;

(2) whether petitioner is entitled to various deductions claimed on Schedule C, Profit or Loss from Business, in addition to those allowed by respondent for all years at issue;

(3) whether petitioner is entitled to claim dependency exemptions under section 151 for his two children[2] for 1982 and 1986;[3] and

(4) whether petitioner is liable for additions to tax for fraud pursuant to section 6653(b)(1) and (2) for 1982 through

---

[1](...continued)
issue; and (4) is liable for additions to tax pursuant to sec. 6654 for failure to make estimated tax payments for all years at issue.  Because petitioner failed to address these issues at trial or on brief, we deem these issues conceded.  See Rule 151(e)(4) and (5); Petzoldt v. Commissioner, 92 T.C. 661, 683 (1989); Money v. Commissioner, 89 T.C. 46, 48 (1987).

Petitioner conceded in the stipulation of facts that he received taxable income from:  (1) Wages during 1982 and 1983 of $4,549 and $165, respectively; (2) partnership distributions during 1983 and 1984 of $4,834 and $3,416, respectively; and (3) dividends during 1984 and 1985 of $25,773 and $46,884, respectively.

[2]In his petition, petitioner asserted that he was entitled to dependency exemptions for three children for the years at issue.  The record indicates that petitioner has only two children.

[3]In the notice of deficiency, respondent allowed dependency exemptions for two of petitioner's children during 1983, 1984, 1985, and 1987.

1985 and pursuant to section 6653(b)(1)(A) and (B) for 1986 and 1987.

FINDINGS OF FACT

Some of the facts have been deemed established for purposes of this case in accordance with Rule 91(f).[4] We incorporate these facts into our findings by this reference. Petitioner resided in Washington, D.C., on the date his petition was filed.

During the years at issue, petitioner conducted business as a financial planner and consultant through four companies: Rice & Associates; Ridgeway, Rice & Dill, Inc.; Integrated Financial Concepts, Inc. (IFC); and Life Investors Group, Inc. Petitioner sold insurance, promoted and sold various tax shelters, and referred clients to his associate, Jim Dill (Mr. Dill), for tax return preparation services.

When petitioner received clients' payments for tax shelter investments, he deposited them into his personal checking accounts.[5] Petitioner also deposited into his accounts the proceeds from financial investment counseling fees, sales

---

[4]On Oct. 18, 2002, respondent filed a motion to show cause why proposed facts in evidence should not be accepted as established under Rule 91(f) and attached a proposed stipulation of facts based on admissions. Petitioner failed to respond to the Court's order to show cause under Rule 91(f) issued on Oct. 18, 2002. As a result, on Nov. 15, 2002, the Court made the order to show cause under Rule 91(f) absolute and deemed established the facts and evidence set forth in respondent's proposed stipulation of facts.

[5]Over the course of the years at issue, petitioner used 12 personal checking accounts.

commissions, tax preparation fees, loans, and real estate sales.

Throughout the years at issue, petitioner had two children, Jamal and Joshua, who lived with petitioner and his wife. For the taxable years 1982 and 1986, petitioner's wife filed as married filing separately and claimed Jamal and Joshua as dependents.

In March 1993, petitioner pled guilty to (1) conspiring to defraud the Government by impeding, impairing, obstructing, and defeating the lawful functions of the Internal Revenue Service in the ascertainment, computation, assessment, and collection of revenue, in violation of 18 U.S.C. sec. 371, and (2) two counts of bank fraud, in violation of 18 U.S.C. sec. 1014.[6] Petitioner's criminal conviction stemmed from his practice of opening interest-bearing bank accounts under false names, addresses, and Social Security numbers in an attempt to conceal his financial activities.

Despite petitioner's awareness of the requirements to file Federal income tax returns and maintain books of account and records of his business activities, petitioner consistently failed to comply with either requirement. Consequently, respondent subpoenaed petitioner's bank records in order to reconstruct petitioner's income for all years at issue. Respondent's examination of petitioner's bank records led

---

[6]Petitioner received a Federal prison sentence of 2 years followed by 3 years of probation.

respondent to issue the notice of deficiency dated June 27, 1994.

On September 23, 1994, petitioner filed a timely petition with the Court. A trial was held on December 5 and 23, 2002. This Court established a posttrial briefing schedule that required respondent to file an opening brief on or before March 10, 2003, and required petitioner to file an answering brief on or before May 22, 2003. Only respondent filed the required posttrial brief.

OPINION

Respondent contends that from 1982 through 1987 petitioner failed to report income he received from the sale of tax shelters and insurance. In addition, respondent alleges that the entire underpayment for all 6 years is attributable to fraud. Petitioner contends that respondent's determinations for all years at issue are incorrect and denies that he committed fraud.

I. Income Tax Deficiencies

A. Unreported Income

Gross income is defined as "all income from whatever source derived" and includes gross income derived from business (Schedule C taxable income). Sec. 61(a)(2). Section 6001 requires a taxpayer to maintain books of account or records sufficient to establish his gross income, deductions, and credits. Sec. 1.6001-1(a), Income Tax Regs.; see also Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). When a taxpayer fails to keep adequate records,

the Commissioner may use an indirect method of proving income, such as the bank deposits method, in order to determine the taxpayer's taxable income.  Estate of Mason v. Commissioner, supra at 656.  Under the bank deposits method, bank deposits are prima facie evidence of income.  Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, supra.

Because petitioner failed to file tax returns and maintain adequate books and records, respondent used the bank deposits method to compute petitioner's taxable income.  Specifically, respondent examined petitioner's deposit tickets, bank statements, transcripts from related bank accounts, and canceled checks.  After excluding transfers of funds between accounts and deposits related to petitioner's wife's income and other non-Schedule-C items, respondent determined that petitioner received unreported Schedule C taxable income during all years at issue.  Respondent's determinations are presumed correct, and petitioner bears the burden of proof.[7]  Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).  Petitioner generally contests respondent's determinations and asserts that he shared the bank accounts with his business associates.

Although petitioner and his wife were listed as the sole account holders, petitioner contends that the bank accounts did

---

[7]Respondent's examination in this case commenced before July 22, 1998, the effective date of sec. 7491.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

not belong to him exclusively.  Petitioner insists that he and his partners, Mr. Ridge[8] and Mr. Dill, shared the bank accounts and the funds deposited into them.  We find no support in the record for this assertion.

Petitioner has presented little evidence concerning the individual bank deposits at issue.  Addressing the 1982 deficiency at trial, petitioner characterized the 1982 deposits as clients' payments toward tax shelter investments.  Petitioner did not produce any corroborating evidence, but rather asked "to be given the benefit of the doubt."  Petitioner did not specifically address the individual bank deposits for 1983 through 1987.

Besides his testimony described above, the only evidence petitioner submitted was the testimony of his pro bono attorney, William Davidson (Mr. Davidson).[9]  Mr. Davidson testified that when he visited respondent's office to examine petitioner's bank records, he found the records in a state of "disarray".  After he examined the bank records, Mr. Davidson doubted whether respondent had properly considered "interbank transfers", noting the large number of bank accounts petitioner used.  However, Mr. Davidson did not allege any specific errors or otherwise

[8]The record does not contain Mr. Ridge's full name.

[9]William Davidson assisted petitioner with his case pro bono during the time leading up to trial, but he did not enter an appearance before the Court on petitioner's behalf.

elaborate on his observations.

On the record as developed, petitioner has not offered sufficient evidence to show that respondent's determinations of petitioner's unreported Schedule C taxable income were in error. We therefore sustain respondent's determinations concerning petitioner's Schedule C taxable income for the years 1982 through 1987.

B.  Schedule C Deductions

Section 162(a) provides a deduction for ordinary and necessary expenses that a taxpayer pays or incurs during the taxable year in carrying on a trade or business (Schedule C expenses).[10]  When using the bank deposits method to determine taxable income, the Commissioner must take into account any deductible expenses, including Schedule C expenses, of which the Commissioner has knowledge.  DiLeo v. Commissioner, 96 T.C. 858, 872 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  If a taxpayer claims any deductible expenses that the Commissioner did not allow, the taxpayer must prove their existence.  Id.

On the basis of the examination of petitioner's personal bank accounts, respondent concluded that petitioner had Schedule C expenses of $25,065 in 1982, $4,001 in 1983, zero in 1984 and

---

[10]Respondent does not question whether petitioner engaged in a trade or business during the years at issue.

1985, $3,955 in 1986,[11] and zero in 1987. In his petition, petitioner contended that he--

> incurred for all years relevant to the Notice, various and certain deductible business expenses, ordinary and necessary for the conduct of his businesses, including businesses involving the ownership of certain real property, all of which businesses during certain years incurred both capital and net operating losses which the Commissioner erroneously disallowed.

Petitioner failed to produce any evidence of his alleged business expenses. At trial petitioner blamed the lack of evidence on respondent, contending that respondent had all of petitioner's business records and was unwilling to share them with petitioner.[12]

Petitioner's contention lacks merit. The only records of petitioner that respondent had in his possession and used in making his determination were petitioner's bank records that respondent had obtained from various financial institutions by summons. The record shows that petitioner had numerous opportunities to inspect the bank records in respondent's possession during the time before and between the two dates of

---

[11]On Mar. 1, 1986, IFC lost its corporate charter. The Schedule C expenses respondent allowed for 1986 are those IFC incurred from March through December of 1986.

[12]Specifically, petitioner asserted that the business records had been in the possession of his former partner, Mr. Dill, and were at some point "confiscated" by "the IRS." According to respondent, any business records held by the Government relating to Mr. Dill had nothing to do with petitioner. In fact, petitioner's lack of business records necessitated respondent's use of the bank deposits method.

his trial.  Petitioner did not avail himself of these opportunities.

Because petitioner has failed to carry his burden of proof, we sustain respondent's determinations concerning petitioner's Schedule C expenses for the years 1982 through 1987.

C.  Dependency Exemptions

A taxpayer may claim exemptions for individuals who qualify as the taxpayer's dependents.  Sec. 151(a), (e)(1).[13]  Section 152(a)(1) permits a taxpayer to claim his children as dependents if the taxpayer provided over half of their support during the calendar year.

When petitioner's wife filed as married filing separately in 1982 and 1986, she claimed their two children as dependents. Petitioner asserts that he was entitled to the dependency exemptions.  Under such circumstances, the right to claim the dependency exemptions belongs to the parent who provided over half of the children's support.  Llorente v. Commissioner, 74 T.C. 260, 269 (1980), affd. in part and revd. in part on other grounds 649 F.2d 152 (2d Cir. 1981).

Petitioner failed to provide any evidence with respect to this issue other than his own testimony.  We are not required to accept petitioner's self-serving testimony in the absence of

---

[13]For taxable years beginning after Dec. 31, 1986, sec. 151(e)(1) was redesignated sec. 151(c)(1) by the Tax Reform Act of 1986 (TRA), Pub. L. 99-514, sec. 103(b), 100 Stat. 2103.

corroborating evidence.  See <u>Tokarski v. Commissioner</u>, 87 T.C. at 77.  Consequently, we sustain respondent's determination disallowing petitioner any dependency exemptions for 1982 and 1986.

D.  <u>Conclusion</u>

We sustain respondent's determinations of income tax deficiencies for the taxable years at issue.

II.  <u>Additions to Tax for Fraud</u>

Section 6653(b)[14] authorizes the imposition of an addition to tax for underpayments of tax due to fraud.  Before amendments by the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 1085 (the 1986 amendments), the addition to tax for fraud consisted of 50 percent of the underpayment amount, plus 50 percent of the interest due on the portion of the underpayment attributable to fraud.  Sec. 6653(b)(1) and (2).  After the 1986 amendments, section 6653(b)(1) and (2) became section 6653(b)(1)(A) and (B), respectively, and imposed an addition to tax for fraud of 75 percent of the portion of the underpayment attributable to fraud, plus 50 percent of the interest due on that portion of the underpayment.  Section 6653(b)(1) and (2) governs petitioner's income tax liabilities for 1982 through 1985; section

[14]Sec. 6653(b) was amended by the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100-647, sec. 1015(b)(2)(B), 102 Stat. 3569, and the Omnibus Budget Reconciliation Act of 1989, Pub. L. 101-239, sec. 7721(c)(1), 103 Stat. 2399.  Sec. 6663(a) contains the current version of the fraud penalty.

6653(b)(1)(A) and (B) applies to the 1986 and 1987 liabilities.[15]

"Fraud is established by proving that the taxpayer intended to evade tax believed to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such tax." Recklitis v. Commissioner, 91 T.C. 874, 909 (1988). The presence of fraud is not presumed, and the Commissioner bears the burden of proving fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b); Beaver v. Commissioner, 55 T.C. 85, 92 (1970). The existence of fraud is a factual question resolved by an examination of the entire record. DiLeo v. Commissioner, 96 T.C. at 874. In order for the Commissioner to prove fraud by clear and convincing evidence, the Commissioner must establish for each year at issue that (1) the taxpayer underpaid his taxes, and (2) some part of the underpayment is attributable to fraud.[16] Id. at 886. The Commissioner may establish fraud by circumstantial

---

[15]The 1986 amendments apply to returns due after Dec. 31, 1986. TRA sec. 1503(e), 100 Stat. 2743.

[16]For purposes of the sec. 6653(b)(1) additions to tax for 1982 through 1985, the Commissioner must prove that a portion of the underpayment in each year is due to fraud, but for purposes of the sec. 6653(b)(2) additions to tax for 1982 through 1985, the Commissioner must prove the specific portion of each year's underpayment that is due to fraud. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992). For purposes of the sec. 6653(b)(1)(A) and (B) additions to tax for 1986 and 1987, if the Commissioner proves that any portion of the underpayment for a year is attributable to fraud, the entire underpayment for that year is treated as attributable to fraud, except with respect to any portions of the underpayment that the taxpayer establishes are not attributable to fraud. Sec. 6653(b)(2).

evidence, id. at 875, which includes the various indicia or badges of fraud relied upon by the courts, see Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601; DiLeo v. Commissioner, supra at 875.  A combination of several badges of fraud constitutes persuasive circumstantial evidence of fraud.  Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Petzoldt v. Commissioner, 92 T.C. 661, 700 (1989).

Respondent has established that petitioner underpaid his income tax for each of the years at issue.  The bank deposits analysis reflects substantial deposits into petitioner's bank accounts for each year.  The record contains substantial credible evidence that the deposits were income to petitioner.  When this fact is coupled with the uncontested fact that petitioner was required to file but failed to file tax returns for the years at issue, we find that the record contains clear and convincing proof that petitioner underpaid his income tax for each of the years at issue.

Respondent's proof that petitioner's underpayments are attributable to fraud consists primarily of petitioner's deemed admissions.  We have held that deemed admissions are sufficient to satisfy the Commissioner's burden of proof with respect to the issue of fraud.  See Doncaster v. Commissioner, 77 T.C. 334, 336-338 (1981).

According to respondent, petitioner's deemed admissions establish the following indicia or badges of fraud for all years

at issue:  (1) Understatement of income; (2) failure to keep adequate books and records; (3) failure to file tax returns; (4) acts designed to conceal income and/or assets; (5) false, misleading, inconsistent, or implausible explanations of behavior; (6) failure to cooperate with respondent's agents; (7) engaging in illegal activities; (8) awareness of tax laws; (9) attempts to conceal illegal activities; (10) high education level and sophistication; and (11) a pattern of inaction and delay during the pretrial and trial proceedings.

We agree that petitioner's deemed admissions contain several badges of fraud.  Petitioner knew of the requirement to file tax returns.  Nevertheless, petitioner consistently failed to report substantial amounts of income over several years, behavior which strongly evidences fraudulent intent.  See Farber v. Commissioner, 43 T.C. 407, 419-420 (1965).  Petitioner also knew of the requirement to maintain adequate books or records of account but failed to do so.  This record-keeping omission, combined with petitioner's failure to file tax returns, constitutes persuasive evidence of petitioner's intent to conceal income and evade taxes.  Petzoldt v. Commissioner, supra at 701.

Other badges of fraud contained in petitioner's deemed admissions include petitioner's involvement in illegal activities, as evidenced by petitioner's criminal convictions and practice of opening bank accounts under false names, addresses,

and Social Security numbers;[17] petitioner's failure to make estimated tax payments; and petitioner's failure to cooperate with respondent's agents' attempts to reconstruct his income. Bradford v. Commissioner, supra at 308; DiLeo v. Commissioner, supra at 875; Petzoldt v. Commissioner, supra at 701-702.

Petitioner has not presented any persuasive evidence to rebut respondent's proof of fraud. Mr. Davidson testified that his review of petitioner's bank records did not reveal any evidence "that would give rise to a claim of fraud, insofar as intentional withholding of information or anything of that sort." Other than Mr. Davidson's comments, the only evidence petitioner offered was his own testimony denying that he committed fraud.

The badges of fraud contained in petitioner's deemed admissions strongly indicate that petitioner intended to conceal his income and avoid paying taxes. We conclude that respondent has met his burden of proof, establishing by clear and convincing evidence that all of petitioner's underpayments for 1982 through 1987 were attributable to fraud. Petitioner is liable for

---

[17]At trial, respondent stated that the deemed admissions relevant to the fraud issue contained information directly taken from the criminal indictment. The record lacks additional details about petitioner's criminal conviction, making it unclear whether the conspiracy and bank fraud charges related to work that petitioner performed for a client or pertained solely to petitioner's personal financial activities and whether the charges covered all of the years at issue. Regardless, however, of the period or the activities covered by petitioner's criminal case, sufficient indicia of fraud still exist to support a finding of fraud for each of the years at issue.

section 6653(b)(1) and (2) additions to tax for 1982 through 1985 and section 6653(b)(1)(A) and (B) additions to tax for 1986 and 1987.

We have considered the remaining arguments of both parties for results contrary to those expressed herein and, to the extent not discussed above, find those arguments to be irrelevant, moot, or without merit.

To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>