EDWARD CHARLES AND RUTH CHARLES, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Charles v. Commissioner
Docket No. 4099-74.
United States Tax Court
T.C. Memo 1983-555; 1983 Tax Ct. Memo LEXIS 226; 46 T.C.M. (CCH) 1349; T.C.M. (RIA) 83555; September 12, 1983. Peter D. Bakutes and Steven R. Guest, for the respondent. DAWSON
MEMORANDUM OPINION DAWSON, Chief Judge: This case is presently before the Court on respondent's Motion for Summary Judgment filed pursuant to Rule 121. [1] It is related to, but not presently consolidated with, Westent, Inc. v. Commissioner, Docket No. 2404-74, and Nicholas Guercio and Victoria Constantine (Formerly Guercio) v. Commissioner, Docket No. 4098-74, which are also decided this day. See T.C. Memo. 1983-553 and T.C. Memo. 1983-554. Respondent determined the following deficiencies in petitioners' Federal income taxes and additions to tax: Addition to Tax
Year
Deficiency
Section 6653(b) [2]
1967
$488.51
$379.76
1968
1,606.82
1,841.98
1969
2,342.44
2,577.77
1970
3,115.41
1,557.70
*228 At issue are (1) whether respondent's determination of the deficiencies should be sustained and (2) whether respondent has established by clear and convincing evidence that part of the underpayment of income tax for each of the taxable years 1967 through 1970 was due to petitioners' fraud with intent to evade tax. The resolution of the second issue will decide whether assessment of the deficiencies for 1967 through 1969 [3] is barred by the statute of limitations. See sections 6501(a) and 6501(c)(1). On February 15, 1983, respondent served petitioners with a request for admission pursuant to Rule 90. However, petitioners failed to respond to the request. Accordingly, each matter in the request is deemed admitted and conclusively established for purposes of this case. Rule 90(c) and (e); *229 Freedson v. Commissioner,65 T.C. 333, 335 (1975), affd. 565 F.2d 954 (5th Cir. 1978). The pertinent facts are summarized below. Facts Deemed Admitted
Petitioners are husband and wife. At the time they filed their petition in this case they resided in Mill Valley, California. Petitioners filed joint Federal income tax returns for the calendar years 1967 through 1970 with the Internal Revenue Service Center in Odgen, Utah. The principal adjustment to income in this case involves unreported income received by petitioners during the years in issue from Westent, Inc. (hereinafter "Westent"), a California corporation with its principal place of business in San Francisco. Because of the important role played by this corporation, its ownership, business, and operation will be described in detail. Petitioner Ruth Charles (hereinafter "Ruth") was the record owner of ten percent of the stock in Westent. Her interest, however, actually belonged to petitioner Edward Charles (hereinafter "Edward"). [4] There were other discrepancies between the actual and record ownership of the balance of the Westent stock. *230 The use of nominees to hold stock, and particularly the holding of Edward's interest in Ruth's name, was intended to conceal the actual ownership of Westent. As we shall see, it was also intended to conceal the skimming of that corporation's unreported receipts by its true owners and was fraudulent with intent to evade tax. Edward was vice president of Westent and reported compensation from that corporation on his Federal income tax returns. Ruth also reported compensation from Westent. During the years in issue Westent's sole business activity was the ownership and operation of the Mocambo, a nightclub-bar located on Powell Street in San Francisco. The Mocambo sold alcoholic, as well as non-alcoholic, drinks to its patrons. As an attraction it offered "dancing" by semi-nude and nude female performers. The Mocambo was one of the first establishments in the United States to offer this type of entertainment, and it attracted a large number of tourists as well as regular local patrons. As a consequence, the Mocambo was able to set prices, establish drink minimums, and attach other conditions to admission at its sole and competitively-unrestricted discretion. Pursuant to *231 policies established by Edward and the other true owners of Westent, female employees of the Mocambo regularly solicited the purchase of drinks from male patrons. The price charged for each "bar girl" drink averaged $5 (whether or not alcoholic) and $30 to $50 or more for a standard size bottle of champagne. The female employees were paid $1 from the sale of such drinks and one-half the proceeds from the sale of champagne, and the balance was retained by the Mocambo. During the years in issue the Mocambo was open sixteen hours per day (10 a.m. to 2 a.m.), seven days per week. Each day of operation was divided into a day shift and a night shift of approximately equal duration. On the average, no fewer than 20 patrons were present at the Mocambo at any given time during the day shift and no fewer than 40 patrons were present at any given time during the night shift. All sales at the Mocambo were "rung up" on the cash register and the proceeds placed in the cash drawer. At the end of each shift the cash register was totaled, its contents were removed, and the receipts were reconciled to the cash register tape. The tape was removed from the cash register and associated with the *232 receipts. A recapitulation sheet, reflecting the total proceeds for the shift as well as amounts paid out of the cash register, was then prepared. Finally, the cash, the cash register tape, and the recapitulation sheet were placed in a safe in a basement office located on the premises of the Mocambo.
Westent's cash receipts journal and the income (sales) account of its general ledger were prepared by an accountant directly from the aforementioned cash register tapes and recapitulation sheets. The accountant verified Westent's gross income (for both Federal income tax and book purposes) by reconciling the tapes and sheets to the bank deposits made to Westent's account. However, Edward and the other true owners of Westent withheld from the accountant the cash register tapes and recapitulation sheets for one of the two daily shifts at the Mocambo. In order to conceal their deception, Edward and the other true owners deposited to Westent's bank account only the receipts reflected on the tapes and sheets that were actually furnished to the accountant. The cash register tapes and the recapitulation sheets that were withheld from the accountant, i.e., those for the other daily shift *233 at the Mocambo, as well as the related receipts themselves, were retained in the safe in the basement office Every Monday evening during the years in issue, Edward and the other true owners of Westent assembled in the office, compared the skimmed cash for the preceding seven days with the daily records thereof, and divided the cash according to their respective ownership interests in Westent. Immediately thereafter the seven secret cash register tapes and the seven secret recapitulation sheets were burned in a waste paper basket in order to destroy all documentation of the existence and the dollar amount of the skimmed cash. Receipts in the following amounts were omitted from Westent's books and records pursuant to the scheme described above: Year [5]
Amount
1967
$28,271.55
1968
35,856.60
1969
41,143.24
1970
85,504.20
These amounts were diverted to Edward and the other true owners of Westent. By participating in the scheme previously described, petitioners received as their share of the unreported gross receipts of Westent the following amounts: Year
Amount
1967
$3,102.97
1968
3,723.57
1969
3,424.77
1970
9,377.88
*234 These amounts represent dividend income to petitioners but were not reported by them on their Federal income tax returns for 1967 through 1970.Their failure to include these amounts in income was fraudulent with intent to evade tax as to each of the years in issue.
Petitioners also failed to report on their Federal income tax return for 1970 interest income in the amount of $1,384.85 which they received during that year. In addition, petitioners failed to substantiate, and are not entitled to, a deduction for employee business expense in the amount of $2,679 and itemized deductions in the amount of $5,575.21, which they claimed on their income tax returns for 1968 and 1969, respectively. On their Federal income tax returns for 1967 through 1970 petitioners reported tax liabilities of $271.00, $2,077.13, $2,813.09, and $ -0-, respectively. However, their true tax liabilities for those years were actually $759.51, $3,683.95, $5,155.53, and $3,115.41, respectively. Thus, petitioners underreported their true tax liabilities for 1967 through 1970 by $488.51, $1,606.82, $2,342.44, and $3,115.41, respectively. Part of the underpayment of Federal income tax for each of the taxable *235 years 1967 through 1970 was due to petitioners' fraud with intent to evade tax. Disposition of Respondent's Motion
Rule 121(a) provides that a party may move for summary judgment upon all or any part of the legal issues in controversy. However, the moving party must prove that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law. Rule 121(b). See Adickes v. Kress & Co.,398 U.S. 144, 157 (1970); Gulfstream Land & Development v. Commissioner,71 T.C. 587, 596 (1979). In deciding a motion for summary judgment, the Court "must resolve all ambiguities and draw all reasonable inferences in favor of the party against whom summary judgment is sought * * * with the burden on the moving party to demonstrate the absence of any material factual issue genuinely in dispute." Heyman v. Commerce and Industry Insurance Co.,524 F.2d 1317, 1320 (2d Cir. 1975). Given the facts which have been conclusively established pursuant to Rule 90, and for the reasons which follow, we think there remains no genuine issue as to any material fact and that a decision in respondent's favor may be rendered *236 as a matter of law. Issue 1. Deficiencies
Petitioners received income from Westent during each of the years in issue which they did not report on their Federal income tax returns for those years. They also received interest income in 1970 which they did not report. It is perfectly clear that such income is taxable and that petitioners should have reported it. Section 61(a). It is equally clear that deductions are a matter of legislative grace and that a taxpayer may claim a deduction only if he is entitled to it and substantiates the amount. New Colonial Ice Co. v. Helvering,292 U.S. 435, 440 (1934); Hradesky v. Commissioner,65 T.C. 87, 89-90 (1975), affd. per curiam 540 F.2d 821 (5th Cir. (1976). Here it is established that petitioners failed to substantiate, and are not entitled to, certain deductions which they claimed on their income tax returns for 1968 and 1969 and which respondent disallowed. In view of the foregoing, we sustain respondent's determination that there are deficiencies in petitioners' Federal income taxes for the taxable years 1967 through 1970 as set forth in the notice of deficiency. Issue *237 2. Fraud
The principal issue in this case is whether any part of the underpayment of tax for each of the taxable years 1967 through 1970 was due to fraud with intent to evade tax within the meaning of section 6653(b). Whether fraud exists is a question of fact to be decided after an examination of the entire record. Stratton v. Commissioner,54 T.C. 255, 284 (1970), modified on another issue 54 T.C. 1351 (1970). Respondent bears the burden of establishing fraud, and he must prove it by clear and convincing evidence. Section 7454(a); Rule 142(b). See, e.g., Stone v. Commissioner,56 T.C. 213, 220 (1971); Otsuki v. Commissioner,53 T.C. 96, 105 (1969). To establish fraud respondent must show that the taxpayer intended to evade taxes, which he knew or believed he owed, by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366, 377-378 (5th Cir. 1968), affg. a Memorandum Opinion of this Court; Powell v. Granquist,252 F.2d 56, 60 (9th Cir. 1958); *238 Acker v. Commissioner,26 T.C. 107, 111-112 (1956). Such intent may be proved by facts deemed admitted pursuant to the Rules of the Court. Marcus v. Commissioner,70 T.C. 562, 577 (1978), affd. without published opinion 621 F.2d 439 (5th Cir. 1980); Doncaster v. Commissioner,77 T.C. 334, 337 (1981); Gilday v. Commissioner,62 T.C. 260 (1974); see Freedson v. Commissioner,65 T.C. at 335; cf. Rechtzigel v. Commissioner,79 T.C. 132, 142-143 (1982), affd. per curiam 703 F.2d 1063 (8th Cir. 1983).
In our view, the facts which have been conclusively established pursuant to respondent's request for admission clearly demonstrate that petitioners fraudulently underpaid their taxes during the years in issue. We think the following facts are particularly persuasive. First, petitioners failed to report significant amounts of income received from Westent during each of the years in issue. It is well established that a consistent pattern of underreporting substantial amounts of income over a period of several years is a strong indicium of fraud. Holland v. United States,348 U.S. 121, 139 (1954). *239 Second, the record ownership of Westent did not reflect its actual ownership. The use of nominees was intended to conceal the skimming of that corporation's unreported receipts by the true owners. Third, each day's income records for one of the two shifts at the Mocambo were withheld from Westent's accountant. In order to prevent the accountant from discovering the deception, only the receipts reflected on the records which were actually furnished to him were deposited to Westent's bank account. Fourth, the income records which were not furnished to Westent's accountant were periodically burned in order to destroy all evidence of the skimming operation. Destruction of records is one of the classic indicia of fraud. Spies v. United States,317 U.S. 492, 499 (1943). Fifth, Westent's unreported income was secretly divided among the true owners on a weekly basis according to their respective ownership interests in the corporations. In view of the foregoing, we hold that petitioners are liable for the additions to tax under section 6653(b) as set forth in the notice of deficiency. Accordingly, assessment of the deficiencies for 1967 through 1969 is not barred *240 by the statute of limitations. See footnote 3 and the accompanying text. To reflect our conclusions, An appropriate order and decision will be entered.
Footnotes
1. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the taxable years in issue.↩
3. There is no issue concerning the statute of limitations for 1970 because the notice of deficiency was issued within three years of the statutory due date for that year's return. See sections 6501(b)(1) and 6503(a)(1).↩
4. The stock in Westent was issued in Ruth's name in 1966.At that time petitioners were not yet married.↩
5. Westent kept its books and records on the basis of a fiscal year ending on October 31.↩