T.C. Memo. 2016-208

UNITED STATES TAX COURT

JOSE R. PENA, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12694-15.                    Filed November 16, 2016.

Jose R. Pena, pro se.

<u>Michael E. D'Anello</u> and <u>R. Jeffrey Knight</u>, for respondent.

MEMORANDUM OPINION

NEGA, <u>Judge</u>:  This matter is before the Court on respondent's motion for summary judgment under Rule 121.[1]

_____

[1]All Rule references are to the Tax Court Rules of Practice and Procedure. All section references are to the Internal Revenue Code in effect for the years in issue.

[*2]   In a notice of deficiency respondent determined that petitioner had underreported his business income and overstated his business expenses, resulting in deficiencies in income tax of $20,561 and $20,149 for tax years 2012 and 2013 (years in issue), respectively.  The notice also determined that petitioner is liable for section 6663 fraud penalties of $15,420.75 and $15,111.75 for the years in issue.  The issues for our consideration are:  (1) whether petitioner underreported his income and overstated his business expenses for the years in issue and (2) whether he is liable for the section 6663 fraud penalties for those years.

Background

On February 18, 2015, respondent sent petitioner a notice of deficiency for the years in issue.  Petitioner timely filed a petition with this Court on May 14, 2015, requesting redetermination of the deficiencies and fraud penalties.  Petitioner resided in Massachusetts when his petition was filed.

On July 14, 2015, respondent filed an answer to the petition which contained 72 affirmative allegations of fact in support of respondent's determinations of the deficiencies and the fraud penalties.  Petitioner did not file a reply to respondent's answer.

On September 28, 2015, pursuant to Rule 37(c), respondent moved for an order that the undenied allegations in the answer be deemed admitted by

[*3] petitioner.  The Court ordered petitioner to file a reply on or before October 26, 2015, but he never did so.  Accordingly, on December 14, 2015, the Court granted respondent's Rule 37(c) motion and deemed admitted the allegations set forth in paragraph 8(a) through (ttt) of respondent's answer.

On January 20, 2016, respondent filed a motion for summary judgment asserting that the case can be decided in respondent's favor because no genuine issues of material fact are in dispute.  By order dated January 22, 2016, the Court ordered petitioner to file a response to the motion for summary judgment on or before February 19, 2016.  Petitioner has failed to do so.

Respondent's motion for summary judgment requests that we sustain the deficiencies and fraud penalties determined in the notice of deficiency.  Respondent contends that facts deemed admitted under Rule 37(c) are sufficient to satisfy his burden of proof as to the deficiencies and penalties.

The deemed admissions under Rule 37(c) establish the following facts.

a.  In 2012 and 2013 petitioner operated two businesses for which he reported income and expenses on Schedules C, Profit or Loss From Business.

b.  In the first business petitioner provided tax return preparation and immigration services (tax prep and immigration business), doing business as "J Pena & Associates".

**[*4]**    c.  In the second business petitioner provided justice of the peace services under his own name.

d.  Petitioner is a native of El Salvador.  He is a U.S. citizen and has been in this country for approximately 30 years.  Petitioner frequently travels to El Salvador.

e.  Petitioner has a bachelor's degree in business administration and accounting from a university in the United States.

f.  Petitioner has provided tax return preparation services for the last 20 years.

g.  Petitioner used his bank account balance to determine his gross receipts from his tax prep and immigration business.

h.  Petitioner took only cash from clients for the services he provided them.

i.  When asked why he dealt exclusively in cash, petitioner explained that he did so because checks bounce.

j.  Petitioner did not always deposit the cash he received from clients and would pay himself a salary from the cash that he did not deposit.

k.  Petitioner timely filed his 2012 and 2013 income tax returns.

l.  On his 2012 return petitioner reported $9,781 in net income from his tax prep and immigration business and $9,983 in adjusted gross income.

[*5]   m.  Petitioner overstated his utilities expense on his Schedule C for his tax prep and immigration business by $3,246 on his 2012 income tax return.

n.  Petitioner overstated his taxes and licenses expense on his Schedule C for his tax prep and immigration business by $3,662 on his 2012 income tax return.

o.  Petitioner overstated his rent or lease expenses for vehicles, machinery, and equipment on his Schedule C for his tax prep and immigration business by $3,600 on his 2012 income tax return.

p.  Petitioner overstated his rent or lease expenses for other business property on his Schedule C for his tax prep and immigration business by $3,570 on his 2012 income tax return.

q.  Petitioner overstated his commissions and fees expenses on his Schedule C for his tax prep and immigration business by $6,800 on his 2012 income tax return.

r.  Petitioner overstated his car and truck expenses on his Schedule C for his tax prep and immigration business by $755 on his 2012 income tax return.

s.  Petitioner overstated his other expenses on his Schedule C for his tax prep and immigration business by $5,624 on his 2012 tax return.

**[*6]**   t.  Petitioner overstated his other expenses on his Schedule C for his justice of the peace business by $515 on his 2012 tax return.

u.  On his 2012 return petitioner overstated his utilities expense on his Schedule C for his justice of the peace business by $650.

v.  On his 2013 return petitioner reported $22,749 in net profit from his tax prep and immigration business and $21,255 in adjusted gross income.

w.  Petitioner overstated his utilities expenses on his Schedule C for his tax prep and immigration business by $132 on his 2013 income tax return.

x.  Petitioner overstated his taxes and licenses expenses on his Schedule C for his tax prep and immigration business by $1,471 on his 2013 income tax return.

y.  Petitioner overstated his rent or lease expenses for vehicles, machinery, and equipment on his Schedule C for his tax prep and immigration business by $2,500 on his 2013 income tax return.

z.  Petitioner overstated his rent or lease expenses for other business property on his Schedule C for his tax prep and immigration business by $367 on his 2013 income tax return.

**[*7]** aa. Petitioner overstated his commissions and fees expenses on his Schedule C for his tax prep and immigration business by $4,800 on his 2013 income tax return.

bb. Petitioner overstated his car and truck expenses on his Schedule C for his tax prep and immigration business by $1,514 on his 2013 income tax return.

cc. Petitioner overstated his other expenses on his Schedule C for his tax prep and immigration business by $7,691 on his 2013 income tax return.

dd. Petitioner overstated his other expenses on his Schedule C for his justice of the peace business by $1,710 on his 2013 tax return.

ee. In 2012 and 2013 petitioner maintained a business bank account at TD Bank, account number XX-XXX7207.

ff. In 2012 and 2013 petitioner maintained a personal bank account a TD Bank, account number XXX-XXX5054.

gg. In 2012 and 2013 petitioner maintained a bank account at Metro Credit Union, account number XXXXXXXXXXXX7105.

hh. In 2012 and 2013 petitioner maintained inadequate business records for his tax prep and immigration business and his justice of the peace business.

ii. Petitioner provided respondent with a report and summary prepared using Quicken software which petitioner claimed documented his income and

**[*8]** expenses for his tax prep and immigration business. However, the gross receipts reported on the report and summary were higher than the amounts reported on petitioner's Schedules C filed with his 2012 and 2013 tax returns. Petitioner could not explain this discrepancy.

jj. Petitioner charged clients set amounts for specific tax return preparation and immigration services.

kk. For tax return preparation petitioner charged clients $100 to prepare a return with a Schedule A, Itemized Deductions, $50 for a return with a filing status of single, $75 for a return with a Schedule C, and $75 for a return with a joint or head of household filing status.

ll. For immigration petitioner's services included obtaining work permits, residency documents, and fingerprints for clients. Petitioner would electronically pay the cost of the immigration transaction through his bank account, and then his clients would reimburse him for the cost of the transaction and pay an additional $75 on top of the transaction's cost for each service. The transaction costs for obtaining work permits, residency documents, and fingerprints were $380, $450, and $85, respectively.

**[*9]**  mm.  Because petitioner failed to maintain adequate records, respondent's examiner reconstructed petitioner's income for his tax prep and immigration business using the unit and volume method.

nn.  For the immigration services, respondent's examiner reviewed petitioner's bank records to see how often he paid the transaction costs for the various services and multiplied that number by the $75 fee petitioner charged per service to arrive at petitioner's gross receipts for the immigration services portion of his business for 2012 and 2013.

oo.  Part of the other expenses petitioner reported on his Schedule C for 2012 and 2013 for his tax prep and immigration business included the transaction costs that petitioner paid for the immigration service he provided for which he was later reimbursed by his clients.  Petitioner also included these transaction costs that he paid on behalf of his clients in his gross receipts for his tax prep and immigration business.  To remain consistent with how petitioner calculated his gross receipts and expenses, respondent's examiner allowed these transaction costs as an expense and included them in her gross receipts calculation.

pp.  To calculate petitioner's gross receipts from the tax return preparation portion of his business, respondent's examiner used respondent's database to determine how often petitioner prepared each type of return.  The examiner then

[*10] multiplied the number of each type of return prepared by the amount that petitioner charged for that type of return to determine his gross receipts from tax return preparation for 2012 and 2013.

qq. After reconstructing petitioner's income for his tax prep and immigration business, respondent's examiner determined that petitioner had significantly underreported his gross receipts for each year.

rr. Petitioner underreported his gross receipts from his tax prep and immigration business by $38,280 for 2012.

ss. Petitioner underreported his gross receipts from his tax prep and immigration business by $37,555 for 2013.

tt. In 2012 petitioner paid approximately $9,600 to rent a personal apartment. He reported $9,983 in adjusted gross income for that same year. Petitioner did not report enough income on his 2012 return to meet even his basic living expenses for that year.

uu. Among the expenses that petitioner claimed as other expenses on his Schedule C for his tax prep and immigration business for 2012 were those for clothing, laundry, credit card payments, tolls, car washes, and parking.

**[*11]** vv. For 2013 petitioner claimed the same types of expenses as other expenses on his Schedule C for his tax prep and immigration business and also included amounts for gifts, auto repairs, and a special loan.

ww. Petitioner met with his clients in his office and did not travel as part of his business. Petitioner did not maintain a mileage log as part of his business and cannot reconstruct one.

xx. Petitioner cannot deduct as a business expense on his 2012 and 2013 income tax returns any auto-related expenses such as tolls, car washes, parking, or auto repairs.

yy. Petitioner's business did not require him to wear a uniform which he could not wear elsewhere outside of his business. Petitioner is not entitled to deduct as a business expense for 2012 or 2013 expenses for clothing or laundry.

zz. Petitioner's expenses for credit card payments for 2012 and 2013, as well as those expenses for gifts and a special loan for 2013, were all personal and not deductible on his Schedules C for his tax prep and immigration business for those years.

aaa. Petitioner conducts his business out of a business condo which he purchased approximately 12 years ago.

[*12] bbb.  The amounts that petitioner claimed as rent expenses for other business property on his Schedules C for his tax prep and immigration business for 2012 and 2013 were for quarterly condo fees he paid.  Petitioner paid $1,185 and $1,220.73 as quarterly condo fees in 2012 and 2013, respectively.  Petitioner's rent expenses for other business property were $4,740 and $4,883 in 2012 and 2013, respectively.

ccc.  In 2012 and 2013 petitioner had a bank account with Citibank in his native El Salvador.  Petitioner earned $1,989 in interest on this account in 2012 and $4,304 in 2013.  Petitioner failed to report these amounts on his income tax returns for 2012 and 2013.

ddd.  When questioned regarding his foreign bank account, petitioner first denied having it; but when confronted with the Forms 1099 that Citibank had issued him petitioner claimed that he did not know what the account could be.  He finally claimed that the account could be related to a house that he had sold in El Salvador years ago.

eee.  Petitioner stated that in 2012 and 2013, he occasionally had family members assist him in his office and paid them cash for their services.

**[\*13]**  fff.  He stated that he did not issue these family members any Forms 1099 for the services they provided because to do so would complicate their receipt of welfare benefits.

ggg.  Petitioner intentionally concealed income by dealing exclusively in cash, not depositing all cash receipts, and failing to maintain adequate records that accounted for his cash receipts.

hhh.  Petitioner intentionally overstated business expenses by exaggerating the amounts of business expenses he could actually substantiate and/or by deducting personal expenses as business expenses.

iii.  Petitioner's unreported income and overstated expenses are substantial and resulted in large underpayments of tax.

jjj.  For 2012 the unreported income is $40,269 and the overstated expenses are $28,422.

kkk.  For 2013 the unreported income is $41,859 and the overstated expenses are $20,185.

lll.  The substantial amounts of unreported income and overstated expenses for at least two consecutive years establish a pattern of conduct.

mmm.  By dealing exclusively in cash, not depositing all cash receipts, not maintaining adequate records of cash receipts, overstating business expenses,

[*14] claiming patently personal expenses as business expenses, and deliberately failing to file required tax forms petitioner engaged in a deliberate pattern of conduct which resulted in the underreporting of his net profits from his businesses on his 2012 and 2013 tax returns.

nnn.  Petitioner intended to mislead respondent.

ooo.  Petitioner fraudulently, and with intent to evade tax, filed a false Form 1040, U.S. Individual Income Tax Return, for the taxable year 2012 that underreported his income by $68,691.

ppp.  Petitioner fraudulently, and with intent to evade tax, filed a false Form 1040 for the taxable year 2013 that underreported his income by $62,044.

qqq.  All or part of petitioner's deficiency in income tax for the taxable year 2012 is due to fraud with intent to evade tax.

rrr.  If it is found that all or part of petitioner's deficiency in income tax for the taxable year 2012 is not due to fraud with intent to evade tax, then respondent alleges that the deficiency is due to negligence or disregard of rules and regulations and/or a substantial understatement of income tax and petitioner is liable for a penalty under section 6662(a).

sss.  All or part of petitioner's deficiency in income tax for the taxable year 2013 is due to fraud with intent to evade tax.

[*15] ttt.  If it is found that all or part of petitioner's deficiency in income tax for the taxable year 2013 is not due to fraud with intent to evade tax, then respondent alleges that the deficiency is due to negligence or disregard of rules and regulations and/or a substantial understatement of income tax and petitioner is liable for a penalty under section 6662(a).

## Discussion

Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(a) and (b).  Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials.  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  The opposing party cannot rest upon mere allegations or denials in his pleadings and must "set forth specific facts showing that there is a genuine dispute for trial."  Rule 121(d).  The moving party bears the burden of proving there is no genuine issue of material fact, and factual inferences will be read in a manner most favorable to the party opposing summary judgment.  Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985).  Deemed admissions pursuant to Rule

**[\*16]** 37(c) have long been held to be sufficient to sustain a motion for summary judgment.  See, e.g., <u>Green v. Commissioner</u>, T.C. Memo. 2007-217; <u>Evanko v. Commissioner</u>, T.C. Memo. 1984-168.

<u>Income Tax Deficiencies</u>

The first issue for decision is whether we should grant respondent summary judgment as to the deficiencies for the years in issue.

Respondent's motion is supported by petitioner's failure to reply to the affirmative allegations in the answer.  Where a reply is not filed, the affirmative allegations in the answer will be deemed denied unless the Commissioner, within 45 days after expiration of the time for filing the reply, files a motion that specified allegations in the answer be deemed admitted.  Rule 37(c).  Facts deemed admitted under Rule 37(c) are considered conclusively established and may be relied on by the Commissioner even when he bears the burden of proof. <u>Baptiste v. Commissioner</u>, 29 F.3d 1533, 1537 (11th Cir. 1994), <u>aff'g</u> T.C. Memo. 1992-198; <u>Marshall v. Commissioner</u>, 85 T.C. 267, 272-273 (1985).

In his answer respondent alleged that petitioner's underreporting his income and falsely overstating his business expenses resulted in underpayments of tax due for the years in issue.  Petitioner was given several opportunities to deny respondent's affirmative allegations.  Because petitioner did not reply to these

**[*17]** allegations and the Court granted respondent's Rule 37(c) motion, petitioner is deemed to have admitted these facts. These admissions are adequate to support respondent's burden of proving no genuine dispute of material fact exists as to the deficiency determinations. Accordingly, we will grant respondent's motion as to the deficiencies determined for the years in issue.

Fraud Penalties

The second issue for decision is whether we should grant respondent's motion for summary judgment as to the section 6663(a) fraud penalties.

Section 6663(a) imposes a penalty equal to 75% of the portion of any underpayment attributable to fraud. The Commissioner bears the burden of proving by clear and convincing evidence that: (1) an underpayment of tax exists and (2) some portion of the underpayment for each year is due to fraud with the intent to evade tax. Sec. 7454(a); Rule 142(b). Deemed admissions under Rule 37(c) are sufficient to satisfy this burden. Doncaster v. Commissioner, 77 T.C. 334, 336-340 (1981).

Petitioner is deemed to have admitted that he fraudulently underreported income and overstated business expense deductions. The facts clearly establish petitioner's underpayments as determined by respondent for the tax years in issue.

**[*18]** Next, we turn to fraud, which is an actual wrongdoing with an intent to evade a tax believed to be owing. See Marshall v. Commissioner, 85 T.C. at 272-273. Fraud is never presumed and must be established by independent evidence of fraudulent intent. Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989). Because direct proof of a taxpayer's fraudulent intent is rarely available, fraud may be proved by circumstantial evidence. The existence of fraud is a question of facts and circumstances that a court must consider on the basis of an examination of the entire record and the taxpayer's entire course of conduct, including the taxpayer's background, education, and experience. Niedringhaus v. Commissioner, 99 T.C. 202, 211 (1992); Stone v. Commissioner, 56 T.C. 213, 223-224 (1971).

Fraudulent intent may be inferred from various kinds of circumstantial evidence, or "badges of fraud", including consistent underreporting of income, inadequate records, concealment of assets, dealing in cash, implausible or inconsistent explanations of behavior, the filing of false returns, and a failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), aff'g T.C. Memo. 1984-601; see also Kosinski v. Commissioner, 541 F.3d 671, 679 (6th Cir. 2008), aff'g T.C. Memo. 2007-173; McGraw v. Commissioner, 384 F.3d 965, 971 (8th Cir. 2004), aff'g T.C. Memo. 2002-314;

[*19] Pittman v. Commissioner, 100 F.3d 1308, 1319 (7th Cir. 1996), aff'g T.C. Memo. 1995-243.

Petitioner's deemed admissions of fact establish numerous badges of fraud including: (1) underreporting his income and overstating deductions; (2) dealing exclusively in cash; (3) maintaining inadequate records and concealing assets; (4) giving implausible or inconsistent explanations; and (5) filing false income tax returns. We note that petitioner possessed greater than average knowledge of the requirements of the Internal Revenue Code because of his 20 years of experience as an income tax return preparer. In addition, our finding of fraudulent intent is supported by petitioner's deemed admissions that he fraudulently and with intent to evade tax filed false Federal income tax returns for the years in issue.

In sum, petitioner's deemed admissions clearly satisfy respondent's burden of proving fraud for purposes of the section 6663(a) penalties. See Doncaster v. Commissioner, 77 T.C. at 337. We are convinced that the totality of the evidence establishes petitioner's fraud for the years in issue. Accordingly, because there are no material facts in dispute and because respondent has satisfied his burden of proof by clear and convincing evidence, we will grant respondent's motion for summary judgment with respect to the section 6663(a) penalties.

**[*20]**  To reflect the foregoing,

<u>An appropriate order and decision</u>

<u>will be entered</u>.