# United States Tax Court

T.C. Memo. 2026-44

ADAM SHRYOCK,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 4757-23.                              Filed May 28, 2026.

————

Adam Shryock, pro se.

*Rae L. Ensor* and *Christina L. Holland*, for respondent.

## MEMORANDUM OPINION

ARBEIT, *Judge*: For taxable years 2011, 2012, and 2013 (years at issue), respondent determined federal income tax deficiencies arising from unreported income and additions to tax under section 6651(f)[1] (fraudulent failure to timely file federal income tax returns) and (a)(2) (failure to timely pay federal income tax).

In his Petition, petitioner neither denied receiving unreported income nor alleged that the receipts were not taxable. Moreover he did not dispute that he failed to file tax returns or pay income tax. In his Answer respondent set forth affirmative allegations, which we later deemed admitted. Relying on the deemed admissions, respondent now moves for summary judgment (Motion). Because respondent is entitled to a decision as a matter of law we will grant the Motion and sustain the

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Monetary amounts are rounded to the nearest dollar.

**[\*2]** deficiencies and additions to tax. After respondent's concessions with respect to 2012, the amounts at issue are as follows:

| Year | Deficiency | Additions to Tax | |
|------|-----------|-----------|------------|
| | | § 6651(f) | § 6651(a)(2) |
| 2011 | $69,013 | $50,034 | $17,253 |
| 2012 | 59,507 | 43,143 | 14,877 |
| 2013 | 45,600 | 33,060 | 11,400 |

## Background

The following facts are based on the pleadings, the Motion, and the undenied allegations in respondent's Answer that the Court deemed admitted (deemed admissions). *See* Rules 37(c), 121(c).

When petitioner filed his Petition, he listed his current address as one in Kansas. Absent stipulation to the contrary, appeal of this case would seem to lie to the U.S. Court of Appeals for the Tenth Circuit. *See* § 7482(b)(1)(A), (2).

I.   *Unreported Income*

In 2011 petitioner incorporated Boobies Rock! Inc. (BR) in California. He solely owned BR and operated the company as a for-profit business. From February 2011 to June 2013, BR hosted at least 3,600 purported fundraising events nationwide. BR hired young women as promotional models (reps) to sell breast cancer awareness merchandise and to collect monetary donations. On behalf of BR the reps falsely represented to attendees at BR events that the funds would support breast cancer research. The reps deposited the proceeds into a bank account controlled by petitioner or delivered the money directly to him.

During the years at issue petitioner controlled a bank account named "Seven Group LLC" (SG).[2] SG received deposits totaling $171,765, $3,955, and $103,476 in 2011, 2012, and 2013, respectively. Further, in 2011 and 2012, Square, Inc. (Square), reported to petitioner himself credit card sales of $4,492 and $98,348, respectively. In total petitioner received at least $176,257, $102,303, and $103,476 in 2011, 2012, and 2013, respectively.

---

[2] Because respondent could not confirm whether petitioner ever formed an entity corresponding to SG, he treated SG as a sole proprietorship.

**[\*3]**    Petitioner also received net distributions from BR of $87,116, $332,496, and $81,419 in 2011, 2012, and 2013, respectively. The distributions represented cash payments made by BR to petitioner or payments made by BR for his benefit, including credit card charges and payment of personal expenditures by check. All distributions from BR were made from its earnings and profits. In 2013 petitioner also subleased his home and received check payments from BR for $900.

II.    *Deceptive Trade Practices and Subsequent Contempt Charge*

In 2015 petitioner and his entities, including BR, were enjoined in Colorado from engaging in deceptive trade practices. *See State ex rel. Weiser v. Shryock*, No. 22CA2254, 2024 WL 3764208, at \*1–2 (Colo. App. Mar. 7, 2024). Among other things, the state prohibited petitioner from engaging in activities related to operating any charitable organization, soliciting charitable donations, or benefiting financially from any relationship with any charitable organization. *See id.* Petitioner and BR faced similar injunctions in four other states. *See Texas v. Shryock*, No. 2014CI17766 (Dist. Ct. Bexar Cnty. filed Nov. 12, 2014); *Indiana v. Boobies Rock!, Inc.*, No. 71D06-1409-PL-000278 (Super. Ct. St. Joseph Cnty. filed Sept. 30, 2014); *Kansas ex rel. Schmidt v. Shryock*, 2013-CV-001213 (3d Jud. Dist. Shawnee Cnty. filed Oct. 22, 2013); *Illinois v. Boobies Rock Inc.*, No. 2013-CH-13745 (Ill. Cir. Ct. Cook Cnty. filed May 30, 2013). In 2022, after repeatedly violating court orders, petitioner was charged for the third time in Colorado with contempt.

III.    *History of Noncompliance and Federal Criminal Tax Conviction*

Petitioner has not filed Form 1040, U.S. Individual Income Tax Return (return), since 2001. In October 2016 he was charged in federal court for the years at issue under section 7203 with six counts of willfully failing to file individual and corporate income tax returns. *See* Information, *United States v. Shryock*, No. 16-CR-00351 (D. Colo. Oct. 6, 2016). In April 2017 he pleaded guilty to one count of willfully failing to file his 2011 return.[3] *See* Plea Agreement, *United States v. Shryock*, No. 16-MJ-01161 (D. Colo. Apr. 4, 2017). He was sentenced to one year in prison followed by one year of supervised release. After his prison term, he violated the conditions of his release, and a court issued a warrant for his arrest. In July 2022 he was arrested.

---

[3] The plea agreement details the elements of the crime: Petitioner was required to file a return, he failed to do so, and that failure was willful.

[*4] IV.     *Substitutes for Returns and Notice of Deficiency*

For the years at issue petitioner did not file returns or report any income from BR, SG, or Square. He made no estimated tax payments. And as the sole owner of BR, he did not cause BR to comply with corporate tax obligations. As a result, the California Franchise Tax Board suspended BR in 2013 for failing to pay state taxes.

Petitioner also failed to submit to the Internal Revenue Service (IRS) for examination records of his income-producing activities. Relying on financial records obtained from third parties, the IRS prepared a bank deposits analysis and determined petitioner's unreported income. The IRS reconstructed his income by analyzing monthly statements for all accounts he controlled, adding up all deposits, and subtracting identifiable nontaxable items and transfers. For each year the IRS prepared a substitute for return, Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, and certified it under section 6020(b). In January 2023 the IRS issued a Notice of Deficiency, determining that petitioner failed to report the following income:

| Item | 2011 | 2012 | 2013 |
|---|---|---|---|
| Gross Receipts or Sales | $176,257 | $102,303 | $103,476 |
| Constructive Dividends | 87,116 | 332,496 | 81,419 |
| Rents | — | — | 900 |

V.     *Tax Court Proceedings*

In April 2023 petitioner filed the Petition in which he appears to concede that the deficiency calculations were based on his "gross deposits." Petitioner asserted that, in calculating the deficiencies, respondent failed to allow certain deductions. However petitioner neither denied receiving unreported income nor alleged that the receipts were not taxable. Moreover he did not dispute that he failed to file tax returns or pay income tax. He did not contest, or even refer to, the additions to tax.

Other than the Petition, petitioner has filed nothing in this case, responding neither to respondent's filings nor to the Court's orders. After petitioner failed to reply to the Answer, respondent moved under Rule 37(c) (Rule 37(c) Motion) that the Court deem petitioner to have admitted the undenied allegations in paragraph 8 of the Answer, which set forth factual statements regarding petitioner's conduct. The Court ordered petitioner to file a reply, warning petitioner that, if he failed to

**[\*5]** do so, the Court would grant respondent's Rule 37(c) Motion. When petitioner failed to file a reply, the Court granted the Rule 37(c) Motion and deemed admitted the affirmative allegations.

Relying on the deemed admissions, respondent moved for summary judgment. The Order directing petitioner to respond stated: "If Mr. Shryock does not file a response, the Court may grant the Commissioner's motion." Once again petitioner failed to respond. Nonetheless, to afford petitioner another opportunity to prosecute his case, the Court scheduled a hearing at the Kansas City, Missouri, trial session where his case was set for trial. The Order setting the hearing stated that "failure to appear at the hearing may result in a decision against [petitioner]." Petitioner, however, did not show up. At the hearing respondent's counsel stated he had not been able to speak with petitioner despite multiple attempts to contact him. We then issued an Order to Show Cause, directing petitioner to explain why we should not grant respondent's Motion. In that Order, we stated that "failure to respond may result in the granting of the Commissioner's motion and a decision being entered [against petitioner]." Again petitioner failed to respond. We will make the Order to Show Cause absolute and move on to respondent's Motion.

*Discussion*

I.   *Summary Judgment*

Summary judgment may be granted where there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 121(a)(2); *see also Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). Facts are viewed in the light most favorable to the nonmoving party. *Dahlstrom v. Commissioner*, 85 T.C. 812, 821 (1985). The nonmoving party may not rest on mere allegations or denials but rather must respond, setting forth specific facts and supporting those facts as required by our Rules, to show that there is a genuine dispute for trial. Rule 121(d); *see also Sundstrand Corp.*, 98 T.C. at 520.

II.   *Burden of Proof*

The Commissioner's determinations set forth in a Notice of Deficiency are generally presumed correct, and the taxpayer bears the burden of proving them erroneous. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). In a deficiency case the petition must include clear and concise assignments of each and every error in the

[*6] Commissioner's determinations. *See* Rule 34(b)(1)(G). Any issue not raised in the assignments of error is deemed conceded. *Id.*; *Nis Fam. Tr. v. Commissioner*, 115 T.C. 523, 538–42 (2000) (holding that, where taxpayers failed to assign "justiciable error" to any of Commissioner's determinations, taxpayers were deemed to concede all deficiency adjustments).

The Commissioner generally bears a burden of production with respect to unreported income, *see Walquist v. Commissioner*, 152 T.C. 61, 67 (2019), and additions to tax, *see* § 7491(c); *Wheeler v. Commissioner*, 127 T.C. 200, 206–07 (2006), *aff'd*, 521 F.3d 1289 (10th Cir. 2008). The Commissioner always bears the burden of proving fraud by clear and convincing evidence. *See* § 7454(a); Rule 142(b).

III.   *Petitioner's Concessions*

In the Petition, petitioner alleged that respondent had failed to consider certain deductions in determining the deficiencies. But he did not challenge any other error: He did not dispute respondent's determination that he received unreported income, and he did not dispute the additions to tax. Consequently, petitioner is deemed to have conceded the unreported income. *See Ottuso v. Commissioner*, T.C. Memo. 2024-91, at *8 (relying on Rule 34(b)(1)(G) to deem over $1 million in unreported income conceded because taxpayer failed to assign error to specific items in bank deposits analysis). He is also deemed to have conceded the additions to tax under section 6651(a)(2). *See Funk v. Commissioner*, 123 T.C. 213, 217–18 (2004) (holding that, because petition failed to challenge section 6651(a)(1) addition to tax, taxpayer was deemed to have conceded the issue, thus relieving Commissioner of any burden of production under section 7491(c)). Respondent retains his burden with respect to the additions to tax for fraudulent failure to timely file under section 6651(f).

IV.   *Analysis*

A.   *Unreported Income*

In the Petition, petitioner acknowledged that the IRS had calculated the deficiencies using his "gross deposits." As stated, because he failed to assign any error to the determination that he received unreported income, he is deemed to have conceded the issue. Even beyond his concession, however, the record clearly establishes that for the years at issue petitioner received unreported income, including

**[\*7]** (1) gross receipts from SG and Square; (2) constructive dividends from BR;[4] and (3) rent payments from BR.

### B.  *Substantiation of Deductions*

In the Petition, petitioner asserted that the IRS had failed to consider purported business expenses incurred by BR, including cost of goods sold and costs for labor, marketing, and shipping. He also stated that BR made over $150,000 in charitable contributions. While asserting that BR made charitable contributions, petitioner did not clearly state who—petitioner or BR—paid the purported business expenses. Respondent, however, denies that petitioner is entitled to any deductions asserted in the Petition because petitioner's claims "appear to relate solely to business expenses incurred by [BR]." Because BR is a corporation separate and distinct from petitioner, respondent argues that its expenses are deductible by the corporation and not by its owner, petitioner. We agree.

Petitioner cannot meet his burden of proving his entitlement to any deduction asserted in the Petition because the expenses there appear to be expenses incurred by BR, a corporation, in furtherance of its own business. *See, e.g.*, *Alioto v. Commissioner*, T.C. Memo. 2025-125, at \*16–17 (holding that taxpayer could not deduct business expenses of his wholly owned corporation on his individual tax return). Even if the expenses were somehow properly deductible by petitioner, he failed to provide records or receipts to substantiate the amounts and nature of the expenses, as required by the Code. *See, e.g.*, *Bradford v. Commissioner*, 796 F.2d 303, 306 (9th Cir. 1986) (holding that, even if alleged "personal business expenses" were deductible, taxpayer failed to substantiate them), *aff'g* T.C. Memo. 1984-601. Because petitioner is not entitled to deduct expenses incurred by or on behalf of his corporation, and because he failed to offer any evidence substantiating the business expenses alleged in the Petition, he is entitled to deduct none of them.

---

[4] Distributions of property, as defined in section 317(a), made by a corporation to its shareholders out of its earnings and profits constitute dividends under sections 301(c) and 316(a). Such distributions are treated as constructive dividends "[w]here a corporation confers an economic benefit to a shareholder without the expectation of repayment." *Magnon v. Commissioner*, 73 T.C. 980, 993–95 (1980). All distributions from BR during the years at issue were made from its earnings and profits. Because those distributions conferred an economic benefit on petitioner and because there is no evidence in the record that he intended to repay BR, the distributions are treated as constructive dividends and are thus properly included in gross income. *See* § 301(c)(1).

**[\*8]**   C.   *Fraudulent Failure to File Under Section 6651(f)*

Section 6651(a)(1) imposes an addition to tax for failure to file a timely return. If the failure is fraudulent, section 6651(f) increases the addition to tax. Respondent determined that petitioner's failure to file returns was fraudulent. Respondent bears the burden of proving fraud by clear and convincing evidence. *See* § 7454(a); Rule 142(b).

To establish a fraudulent failure to file under section 6651(f), the Commissioner must prove that the taxpayer (1) failed to timely file a return for a year in which a tax liability was required to be shown and (2) acted with fraudulent intent. *See Belcik v. Commissioner*, T.C. Memo. 2024-49, at \*18–19; *Sanders v. Commissioner*, T.C. Memo. 2023-71, at \*5–8, *aff'd*, No. 24-1053, 2024 WL 5347248 (6th Cir. Dec. 13, 2024). The record shows that petitioner failed to file tax returns for the years at issue despite having taxable income and tax liabilities required to be shown on those returns.

Because direct proof of a taxpayer's intent is rarely available, the Commissioner may establish fraudulent intent by "circumstantial evidence and reasonable inferences drawn from the facts." *See Clark v. Commissioner*, T.C. Memo. 2021-114, at \*36–37. For purposes of section 6651(f), we examine the same "badges of fraud"[5] that we consider relevant to determining fraud under section 6663. *See Clayton v. Commissioner*, 102 T.C. 632, 653 (1994). In evaluating those badges, we focus on the taxpayer's reason for failing to file a return. *Enayat v. Commissioner*, T.C. Memo. 2009-257, slip op. at 66. "If that decision was made with the intent to evade tax, then the addition to tax under section 6651(f) may properly be imposed." *Id.*

---

[5] Courts have developed "badges of fraud" to describe behavior that may indicate fraudulent intent. *See, e.g.*, *Bradford v. Commissioner*, 796 F.2d at 307–08; *Niedringhaus v. Commissioner*, 99 T.C. 202, 211 (1992); *Clark*, T.C. Memo. 2021-114, at \*37. While the presence of any one factor is not dispositive, multiple factors together are strong circumstantial evidence of fraudulent intent. *Niedringhaus*, 99 T.C. at 211. The oft-quoted nonexclusive list of such badges includes:

> (1) Understatement of income; (2) inadequate records; (3) failure to file tax returns; (4) implausible or inconsistent explanations of behavior; (5) concealment of assets; (6) failure to cooperate with tax authorities; (7) filing false Forms W–4; (8) failure to make estimated tax payments; (9) dealing in cash; (10) engaging in illegal activity; and (11) attempting to conceal illegal activity.

*Id.*

**[\*9]** To satisfy his burden of proof with respect to fraud the Commissioner may rely on facts deemed admitted and conclusively established under Rule 37(c). *See Doncaster v. Commissioner*, 77 T.C. 334, 336–37 (1981); *Pena v. Commissioner*, T.C. Memo. 2016-208, at *19. Respondent does so here and we agree: The deemed admissions establish fraud.[6] For each year at issue petitioner was required to file a return on which a liability was required to be shown, and he fraudulently failed to file each such return with the intent to evade tax. In short, as he is deemed to have admitted, he "received taxable income . . . but failed to file any tax return . . . due to fraud."

Finally petitioner did not argue—let alone show—that his failure to file was due to reasonable cause and not due to willful neglect.[7] *See United States v. Boyle*, 469 U.S. 241, 245 (1985) (holding that taxpayer bears the burden of proving reasonable cause and lack of willful neglect).

---

[6] Petitioner (1) failed to report over $883,000 in gross receipts and constructive dividends from BR, *see Petzoldt v. Commissioner*, 92 T.C. 661, 701 (1989) ("[Taxpayer's] failure to file for two consecutive years although he received large amounts of income is 'persuasive circumstantial evidence of fraud.'" (quoting *Marsellus v. Commissioner*, 544 F.2d 883, 885 (5th Cir. 1977), *aff'g* T.C. Memo. 1975-368)); (2) failed to file returns even though he was "well aware of his duty" to do so, as shown by his prior filings for 1999–2001, *see id.* (citing *United States v. McCabe*, 416 F.2d 957 (7th Cir. 1969), for the proposition that "taxpayer's filing of timely returns in prior years is evidence which permits the inference that he knew the law required him to file returns and that he intentionally failed to do so"); (3) failed to make estimated tax payments despite receiving substantial income; (4) failed to show he maintained adequate records, or any records at all, of his income-producing activities; (5) failed to provide records of his income-producing activities to, and generally to cooperate with, an IRS examination to determine his tax liability, *see Rowlee v. Commissioner*, 80 T.C. 1111, 1125 (1983); and (6) failed to pay state taxes and to cooperate with the California Franchise Tax Board, resulting in the suspension of BR in California.

Petitioner also engaged in illegal activities. He solicited monetary donations from the public purportedly for breast cancer research. *See Petzoldt*, 92 T.C. at 701. Several states deemed that BR and petitioner engaged in deceptive trade practices; when he continued engaging in those practices, he was held in contempt. *See id.* at 701–02. He concealed his income-producing activities by paying personal expenses from the account of his wholly owned corporation. *See Gondal v. Commissioner*, T.C. Memo. 2024-36, at *10. Finally he was convicted in federal court after pleading guilty to willfully failing to file his 2011 return. *See Wilkinson v. Commissioner*, T.C. Memo. 1997-410, slip op. at 13. The facts in the record thus easily carry respondent's burden of proving fraud by clear and convincing evidence. *See Bradford v. Commissioner*, 796 F.2d at 308.

[7] Regardless, petitioner could not make such an argument for 2011 because his conviction under section 7203 conclusively establishes willful neglect. *See Kotmair v. Commissioner*, 86 T.C. 1253, 1263–64 (1986).

**[\*10]** Accordingly we sustain the additions to tax under section 6651(f) for fraudulent failure to timely file.

V. *Conclusion*

Because respondent is entitled to a decision as a matter of law, we will grant the Motion and for all years at issue sustain the deficiencies and additions to tax.

To reflect the foregoing,

*An appropriate order and decision will be entered.*